886 So.2d 1004 (2004)
SINGER ASSET FINANCE COMPANY, L.L.C., Appellant,
v.
CONTINENTAL CASUALTY COMPANY, et al., Appellees.
No. 5D03-2695.
District Court of Appeal of Florida, Fifth District.
October 22, 2004.
Rehearing Denied November 23, 2004.
John T. Mulhall, III, and Chad R. Laing of Rutherford Mulhall, P.A., and Scott J. *1005 Topolski of Buckingham, Doolittle & Burroughs, LLP, Boca Raton, and Adam Zoldessy, pro hac vice, Bayonne, N.J., for Appellant.
Robert A. Selig of Law Office of Robert A. Selig, LLC, Boca Raton, and Stephen C. Baker, pro hac vice and Timothy J. O'Driscoll, pro hac vice, of Drinker, Biddle & Reath, LLP, Philadelphia, P.A., for Appellee Continental Casualty Company.
Robert T. Bowling and Scott W. Cichon of Cobb, Cole, Daytona Beach, for Appellee Jack Green.
TORPY, J.
In this proceeding to collect a debt due on a promissory note, the creditor, Singer Asset Finance Company, LLC. ("Singer"), challenges the summary final judgment against it and in favor of Continental Casualty Company ("Continental"), who owes money to Singer's debtor. We affirm.
On or about October 14, 1979, Armenia Green ("Mrs.Green"), a Texas resident, was injured in an accident at the Brazoria County Fair Grounds in Texas. On August 28, 1981, she entered into a Settlement Agreement with the event promoter's insurance carrier, Continental, wherein Continental agreed to pay Mrs. Green monthly payments of $700 over the ensuing 25 years with annual increases of 3.5%. The Settlement Agreement contained the following language regarding assignments:
To the extent provided by law, the aforesaid monthly payments shall not be subject to assignment, transfer, commutation or encumbrance, except as provided herein.
Mrs. Green died on March 3, 1997. Pursuant to the terms of the Settlement Agreement, her husband, Appellee Jack Green ("Green"), became the contingent payee of the remaining monthly payments.
On December 13, 1998, Green executed a Loan Application and Loan Agreement with Merrick Bank Corporation of Murray, Utah. At the time Green executed the Loan Agreement, he resided in Texas; he moved to Florida in 1999. According to the contemporaneously executed promissory note, Green borrowed $35,314, which he agreed to re-pay by making 36 monthly payments of $1,256.28, with a 3.5% annual increase. The Loan Agreement provided that repayment of the loan was to be made from the "Periodic Payments" that Green received from Continental under the Settlement Agreement. Specifically, the Loan Agreement provided:
Borrower hereby applies for and requests Lender to make a loan (the "Loan") to Borrower in the principal loan amount specified in the Terms Rider (the "Loan Amount") and to be evidenced by a Secured Promissory Note (Exhibit "F"). If borrower's application is accepted, the Loan Amount and accrued interest shall be repaid in periodic loan payments ("Loan Payments") according to the terms specified in the Terms Rider. If Borrower's application is accepted, the Loan Payments shall be repaid from the Periodic Payments by an assignment of the Assigned Payments as set forth in the Terms Rider. Borrower's obligation to pay Lender is to be secured by a Security Agreement (Exhibit "G") given by Borrower to Lender and in Lender's favor according to the Uniform Commercial Code pledging the Collateral and perfecting the secured interest in the Collateral by execution and delivery of a UCC-1 financing statement (Exhibit "H") all as more particularly described below.
The Loan Agreement further provided that Green "hereby pledges and collaterally assigns to [Merrick Bank], [Green's] right, title and interest in and to the Collateral." *1006 Green received the loan proceeds in January, 1999. Either immediately upon execution of the Loan Agreement, or shortly thereafter, Merrick Bank assigned its interest in the Loan Agreement to Appellant Singer.
Approximately eight months after the execution of the Loan Agreement, Singer notified Green that he was in default for failing to make the monthly payments and demanded payment of the outstanding balance. Green again failed to pay. On October 11, 1999, Singer filed suit against Green. With leave of court, Singer filed an Amended Complaint on May 10, 2001, adding Continental as a defendant, asserting counts for injunctive relief against Continental, and a count for declaratory judgment against both Green and Continental. Thereafter, Continental filed its Answer and Affirmative Defenses to the Amended Complaint, raising the anti-assignment language of the Settlement Agreement as one of its affirmative defenses.
In granting summary judgment for Continental, the lower court concluded that the Settlement Agreement is an annuity and that Texas law[1] renders void any purported assignment of an annuity. Tex. Ins.Code Ann. art. 21.22 § 5 (Vernon 2002).[2] We disagree with the court's conclusion that the Settlement Agreement is an "annuity." The agreement is devoid of an essential element of an annuity because no "investment" was involved. See Steves & Sons, Inc. v. House of Doors, Inc., 749 S.W.2d 172, 175 (Tex.App.1988), quoting In re Howerton, 21 B.R. 621 (Bankr.N.D.Tex.1982) ("an annuity is essentially a form of investment which pays periodically during the life of the annuitant or during a term fixed by contract rather than on the occurrence of a future contingency") (emphasis added).
Nevertheless, whether or not the agreement is properly characterized as an annuity, under Texas law, the anti-assignment provision is valid and enforceable, and defeats Singer's right to make a direct claim against Continental under the Settlement Agreement. The Texas Dev. Co. v. Exxon Mobil Corp., 119 S.W.3d 875, 881 (Tex.App.2003).
AFFIRMED.
SHARP, W. and PALMER, JJ., concur.
NOTES
[1] The parties agree that Texas law governs the substantive issues.
[2] Texas Ins.Code Ann. art. 21.22 § 5 was repealed effective June 1, 2003. For current provisions, see Tex. Ins.Code Ann. § 1108.102 (Vernon 2004). Prior to repeal, art. 21.22 § 5, provided:

Wherever any policy of insurance, annuity contract, or plan or program of annuities and benefits mentioned in Section 1 of this article shall contain a provision against assignment or commutation by any beneficiary thereunder of the money or benefits to be paid or rendered thereunder, or any rights therein, any assignment or commutation or any attempted assignment or commutation by such beneficiary of such money or benefits or rights in violation of such provision shall be wholly void.
Tex. Ins.Code Ann. art. 21.22 § 1 (Vernon 2002), provided an exemption against execution, attachment, garnishment, seizure or other process, for
all money or benefits of any kind, including policy proceeds and cash values, to be paid or rendered to the insured or any beneficiary under any policy of insurance or annuity contract issued by a life, health or accident insurance company, including mutual and fraternal insurance, or under any plan or program of annuities and benefits in use by an employer or individual.