2006 OK 65

Connie RANDALL, Plaintiff–Counter–Defendant–Appellant,

v.

TRAVELERS CASUALTY & SURETY COMPANY, formerly known as Aetna Life and Casualty Company, Defendant–Counterclaimant–Third–Party Plaintiff–Appellee,

v.

The Estate of Richard D. Randall, Sr., Third–Party Defendant.

No. 103,417.

Supreme Court of Oklahoma.

Sept. 19, 2006.

N. Franklyn Casey, Casey & Jones, P.C., Tulsa, OK, for appellant.

Phil R. Richards, Thomas D. Hird and Jason L. Glass, Richards & Connor, Tulsa, OK, for appellee.

WATT, C.J.

¶ 1 The United States Court of Appeals for the Tenth Circuit certified two first impression questions of Oklahoma law under the Revised Uniform Certification of Questions of Law Act, 20 O.S.2001 §§ 1601, *et seq.* As reformulated,[1] the questions ask:

"1. Does the principle, articulated in *Alkire v. King*, 183 Okla. 187, 80 P.2d 309 (1938), that the assignment of a life insurance policy conveys to the assignee a right to the pro-

1. Questions of law may be reformulated pursuant to 20 O.S.2001 § 1602.1. See also, *Strong v. Laubach*, 2004 OK 21, ¶ 1, 89 P.3d 1066. As originally certified, the questions provide:

Does the principle articulated in *Alkire v. King*, 1938 OK 282, 80 P.2d 309, that the assignment of a life insurance policy conveys to the assignee a right to policy proceeds although the insured's estate is the named beneficiary, apply to contracts generally?

May an insurer alter the right to assign rights under a settlement agreement by funding the contract through the purchase of an annuity where the settlement agreement does not anticipate such a purchase and where neither the settlement agreement nor the annuity contains anti-assignment provisions?

¶ 2 We answer the first question "yes." Our determination is supported by the *Alkire* Court's grounding of its decision that the owner of a life insurance policy made payable to the owner's estate may assign all property interests therein [2] in principles long recognized in Oklahoma law—that a living person has no estate subject to probate [3] and that there can be no vested right of inheritance in the estate of a living person.[4] Furthermore, our pronouncement in *Prudential Ins. Co. of America v. Glass*, 1998 OK 52, 959 P.2d 586 that an assignment of a life insurance policy is an ordinary contract between the assignor and the assignee and, as such, is interpreted under general contract principles is determinative of the issue.

¶ 3 We answer the second question "no." Our determination is supported by well settled principles of Oklahoma law that: 1) contractual rights are presumed to be assignable;[5] 2) generally, where an executor or administrator would succeed to rights and liabilities of a deceased party to a contract, the contract is assignable;[6] and 3) the failure to include any provision making a contract nonassignable results in the assumption that the rights under the agreement may be assigned.[7] Extant jurisprudence also bol-

ceeds even though the insured's estate was the named beneficiary, apply more broadly to contracts other than life insurance policies?

2. Does a decision by a tortfeasor to fund a settlement agreement by purchase of an annuity alter the assignable interest of a claimant thereunder in a manner that could affect the answer to question one?"

One reason for reformulating the first question is that it implies that it was the annuity contract which was the subject of the assignment. The record does not support this assumption. Exhibit 1 to the Second Amended Petition, filed on August 23, 2002, provides in pertinent part:

"*ASSIGNMENT OF CONTRACT RIGHTS*
WHEREAS, Richard D. Randall, Sr. And Connie Randall, individually and as husband and wife, made and entered into that certain Release and Covenant Agreement with Aetna Life & Casualty Company, on August 22, 1984 (hereinafter 'Agreement'), a true and correct copy of which is attached hereto and made a part hereof, and
WHEREAS, said Richard D. Randall, Sr. desires to transfer all of his right, title and interest, under and by virtue of said Agreement as a gift to his beloved wife, Connie Randall,
NOW, THEREFORE, FOR AND IN CONSIDERATION of love, affection and other good and valuable consideration, the sufficiency of which is hereby acknowledged, Richard D. Randall, Sr. does hereby transfer, assign and set over unto Connie Randall, her executors, administrator, heirs, successors and assigns, all of his right, title and interest in and to the within Agreement, set forth above, to have and

to hold unto the said Connie Randall, her executors, administrators, heirs, successors and assigns forever.
/s/ RICHARD D. RANDALL, SR. . . . ."

2. See also, *Prudential Ins. Co. of America v. Glass*, 1998 OK 52, ¶ 23, 959 P.2d 586 [General rule is that where an insured reserves the right to assign a life insurance policy or to change the beneficiary, a mere beneficiary has no vested interest in the policy proceeds prior to the insured's death.]; *Devin v. Connecticut Mut. Life Ins. Co.*, 1916 OK 707, ¶ 0, 158 P. 435 [Unconditional assignment of life policy divests insured of all title to policy and vests beneficial interest therein in assignee.].

3. *Chandler v. Denton*, see note 17, infra; *Winter v. Klein–Schultz*, see note 17, infra; *Abraham v. Homer*, see note 17, supra; *Strawn v. Brady*, see note 17, infra; *Pettis v. Johnston*, see note 17, infra.

4. *Jameson v. Jameson*, see note 18, infra.

5. *In re Kaufman*, 2001 OK 88, ¶ 8, 37 P.3d 845; *Earth Products Co. v. Oklahoma City*, 1968 OK 39, ¶ 0, 441 P.2d 399; *Minnetonka Oil Co. v. Cleveland Vitrified Brick Co.*, 1910 OK 279, ¶ 5, 111 P. 326.

6. *Earth Products Co. v. Oklahoma City*, see note 5, supra; *Minnetonka Oil Co. v. Cleveland Vitrified Brick Co.*, see note 5, supra.

7. *Id.*

sters our answer.[8]

## CERTIFIED FACTS[9] AND PROCEDURAL BACKGROUND

¶4 In 1982, Richard Randall (husband/assignor) was injured in an accident with an insured of the predecessor of the appellee, Travelers Casualty & Surety Company (Travelers/insurer). Two years later, the husband and the appellant, Connie Randall (wife/assignee) entered a release and covenant with the insurer providing that the husband would be entitled to monthly payments of $1,250.00 for three hundred months. Pursuant to the settlement agreement, upon the husband's death, any remaining payments were to be made "to his estate." It is undisputed that the release and covenant, dated August 22, 1984, contains no anti-assignment provision and that it does not provide the manner in which the payments are to be funded.

¶5 Travelers subsequently purchased an annuity from Executive Life Insurance Company of New York, now Metropolitan Life Insurance Company (MetLife) as separate funding for the monthly payments. The husband or his estate is named as the annuitant and payee "subject to change" under the contract while Travelers is its owner. The husband's estate is also named as the primary beneficiary "subject to change" for payments payable after the husband's death.[10] Not only does the annuity not contain an anti-assignment provision, it specifically provides that the owner can assign the contract and that the rights of any assignee will supersede those of the owner or beneficiary. Furthermore, the owner can change the beneficiary upon written request "signed while the Annuitant is living."[11]

¶6 On November 6, 2000, two days before his death, the husband executed an assignment of his contract rights **under the release and covenant agreement.** The assignment provides that it is a transfer of all the husband's "right, title and interest, under and by virtue" of the release and covenant agreement to his wife.[12] Both Travelers and Met-Life were notified of the assignment and of the husband's death and demand was made for all remaining payments due under the release and covenant agreement to be paid to the wife. The wife was informed that Travelers and MetLife were taking the position that all payments must be made to her husband's estate as provided by the release and covenant and as beneficiary of the annuity. Payments were suspended pending the appointment of an administrator of the husband's estate.

¶7 On August 23, 2002, the wife filed suit against Travelers in Tulsa County District Court alleging breach of contract and bad faith. In September, Travelers removed the cause to federal court asserting a counterclaim/third-party claim for a declaratory

8. See ¶24 and accompanying footnotes, infra.

9. In answering a certified question, the Court does not presume facts outside those offered by the certification order. *In re Harris*, 2002 OK 35, ¶4, 49 P.3d 710; *Jones v. University of Central Oklahoma*, 1995 OK 138, ¶5, 910 P.2d 987. Although we will neither add nor delete such facts, we may consider uncontested facts supported by the record. See *In re Harris*, this note, supra.

10. The application for an immediate annuity, executed by Travelers' predecessor on October 16, 1984, provides in pertinent part:

"... ANNUITANT
Richard D. Randall, Sr.
... 11. OWNER IF OTHER THAN ANNUITANT
The Aetna Casualty and Surety Company
... 17. PAYEE (subject to change) for annuity payments ...

... Annuitant or the estate of annuitant
18. BENEFICIARY (subject to change) for any payments payable after death of annuitant
...
PRIMARY The Estate of Richard D. Randall, Sr...."

11. The annuity contract provides in pertinent part at p. 9:

"... Ownership, Beneficiary and Assignment Provisions
... Beneficiary. The Beneficiary shall be the person the Owner names in the Application, or changes by written request signed while the Annuitant is living....
Assignment. This Contract may be assigned by the Owner.... The rights of any Assignee supersede those of any Owner or Beneficiary...."

12. The Assignment of Contract Rights, executed on November 6, 2000, see note 1, supra.

judgment specifying the proper recipient of the unpaid funds.

¶ 8 Asserting that the husband could not alter the terms of the underlying contract by disenfranchising his estate's interest in the annuity payments, Travelers moved for summary judgment. The United States District Court for the Northern District sustained the motion on February 4, 2004. On March 2nd, the wife filed her notice of appeal to the Tenth Circuit Court of Appeals.

¶ 9 Recognizing that the lawsuit involved unsettled issues of Oklahoma law, the Tenth Circuit *sua sponte* certified two issues to this Court pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S. 2001 §§ 1601, *et seq.* We set a briefing cycle which was concluded on July 27, 2006, with the simultaneous filing of the parties' answer briefs.

## DISCUSSION

¶ 10 1) **The principle articulated in *Alkire v. King* that the assignment of a life insurance policy conveys to the assignee a right to policy proceeds although the insured's estate is the named beneficiary applies to contracts generally.**

¶ 11 Both parties tend to focus on the assignable aspects of the annuity contact. Nevertheless, they each recognize that the issue here involves the rights of the husband to receive monthly payments under the settlement agreement between himself and Travelers' predecessor—**an agreement which does not contemplate its funding by** the purchase of an annuity and which contains no anti-assignment provision. Furthermore, neither the original settlement agreement nor the assignment is subject to the Structured Settlement Protection Act of 2001, 12 O.S.2001 § 3228 *et seq.*[13]

¶ 12 *Alkire v. King*, 1938 OK 282, 80 P.2d 309, holds that the insured under a life insurance policy made payable to the insured's estate may assign all interests under the policy during the insured's lifetime. Relying on *Alkire*, the wife argues that because neither statutory law nor contractual provisions prevented alienation and because a person's estate is indistinguishable from the living person, a reference to her husband's estate as beneficiary in the settlement agreement did not prohibit the assignment of his contractual rights. The wife also finds support in the general legal presumption in Oklahoma law that all contracts are freely assignable.[14]

¶ 13 Travelers contends that *Alkire* should be specifically limited to the arena of conveyances involving life insurance policies because of the special relationship between the insured and a beneficiary.[15] The contention is unconvincing.

¶ 14 a) **Oklahoma courts have long recognized the basis upon which *Alkire v. King* was decided—that a living person has no estate and that there are no vested rights of inheritance in the estate of a living person.**

¶ 15 In determining that an insurance policy naming the owner's estate as a beneficiary

---

13. Provisions of the Structured Settlement Protection Act of 2001, 12 O.S.2001 § 3228 *et seq.* are inapplicable to the agreement reached here in 1984 and to the attempted assignment in 2000. Title 12 O.S.2001 § 3245 provides:
"This act shall apply to any transfer of structured settlement payment rights under a transfer agreement entered into on or after the thirtieth day after the date of enactment of this act; provided that nothing contained herein shall imply that any transfer under a transfer agreement reached prior to such date is either effective or ineffective."
*In re Kaufman*, see note 5, supra.

14. *In re Kaufman*, see note 5, supra; *Earth Products Co. v. Oklahoma City*, see note 5, supra; *Minnetonka Oil Co. v. Cleveland Vitrified Brick Co.*, see note 5, supra.

15. Travelers presents a number of scenarios in which similar treatment of a settlement agreement could alter or change some other person's right under the contract. Travelers asserts that had it intended for the husband to have the authority to change the contingent beneficiary under the contract, it would have specifically included such a provision in the settlement agreement. Travelers does not explain why it did not add an anti-assignment provision to the contract to address the issue presented here—the husband's ability to assign his contract rights during his lifetime. Most certainly, if they could have added the former, the insurer could have negotiated for the latter.

could be assigned during the insured's lifetime, the *Alkire* Court quoted from a Massachusetts case, *Chartrand v. Chartrand,* 295 Mass. 293, 3 N.E.2d 828 (1936).[16] It is instructive that the material quoted from *Chartrand* and relied upon by the Massachusetts Court to determine that the insured had authority to assign rights under the policy contains principles long recognized in Oklahoma law—that a living person has no estate subject to probate[17] and that there can be no vested right of inheritance of the estate of a living person.[18]

¶ 16 **b)** ***Prudential Ins. Co. of America v. Glass*** **states that an assignment of a life insurance policy is an ordinary contract between the assignor and the assignee to be interpreted under general contract principles.**

¶ 17 The issue of whether insurance contracts should be treated differently from other contracts for purposes of assignments was discussed by this Court in *Prudential Ins. Co. of America v. Glass,* 1998 OK 52, ¶ 19, 959 P.2d 586. In *Glass,* we upheld an assignment of a life insurance policy intended as a pledge of the policy as collateral for a debt owed to the assignee. In doing so, we stated that "[a]n assignment of a life insurance policy is an ordinary contract between the assignor and assignee [citation omitted] and, as such, it is interpreted under general contract principles."

¶ 18 In answering the first certified question in the affirmative, we consider the underpinnings of the *Alkire* decision discussing the inseparability of estates and living persons as legal entities in succession by operation of law and the statement in *Glass* providing that assignments of life insurance policies are nothing more than ordinary contracts to be determined under general contract principles.[19]

¶ 19 **2) An insurer may not alter the ability to assign rights under a settlement agreement by funding the contract through the purchase of an annuity where the settlement agreement does not anticipate such a purchase and where neither the settlement agreement nor the annuity contains anti-assignment provisions.**

¶ 20 Having determined that the assignment here is subject to construction under ordinary contractual principles, we now address Travelers' contention that the payments under the settlement agreement could not be assigned. Much of Travelers' argument on this issue continues to turn on whether the annuity contract should be treated as insurance and the fact that the husband did not negotiate for an assignment provision to be included in the covenant and release. The wife argues that the lack of any anti-

16. *Alkire v. King,* 1938 OK 282, ¶ 7, 80 P.2d 309 providing in pertinent part:

> "... Since the policies here involved were payable to his estate, Nova E. Alkire had the absolute right to assign and transfer them. 37 C.J. 422, 423.
> 'The testator as the insured had all rights under the policy as it was issued. It was payable to his estate upon his death. No third person was named as beneficiary. No one else had any interest in the policy. * * The assignment of a life insurance policy and a change of beneficiary of the policy are not the same. An assignment is a transfer in whole or in part of the rights of the assignor. A change of beneficiary is the exercise of a power given to the insured by the terms of the policy. * * * No third person had any interest in this policy. It was payable to the estate of the insured. A living person has no heirs. * * * Under such a policy all rights normally held by a beneficiary belonged to the insured. * * * The insured and his own estate during his life do not con-

stitute two separate and distinct entities; they are a single unit of ownership.' *Chartrand v. Chartrand,* Mass., 295 Mass. 293, 3 N.E.2d 828, 830.' "

17. *Chandler v. Denton,* 1987 OK 109, ¶ 13, 747 P.2d 938; *Winter v. Klein–Schultz,* 1938 OK 47, ¶ 4, 76 P.2d 1051; *Abraham v. Homer,* 1924 OK 393, ¶ 2, 226 P. 45; *Strawn v. Brady,* 1921 OK 399, ¶ 12, 202 P. 505; *Pettis v. Johnston,* 1920 OK 224, ¶ 56, 190 P. 681.

18. *Jameson v. Jameson,* 1925 OK 579, ¶ 10, 238 P. 426.

19. The determination that whether the settlement agreement or the annuity should be considered a contract of insurance does not alter the application of general contract principles makes it unnecessary to address Travelers' contentions regarding the applicability of the Uniform Commercial Code in labeling the form of the contract.

assignment provision in the contract and in the annuity coupled with the fact that the covenant and release does not anticipate the purchase of an annuity results in the rights of the settlement agreement being subject to assignment. The wife's arguments are supported by general principles of Oklahoma contract law and extant jurisprudence.

¶ 21 a) **Under Oklahoma law, contract rights are presumed to be assignable; generally, where an executor or administrator succeeds to rights and liabilities of a deceased party to a contract the contract is assignable; and failing to include language restricting an assignment results in the assumption that the contract rights may be assigned.**

¶ 22 An assignment is the expressed intent of one party to pass rights owned to another.[20] Valid assignments pass the assignor's title, leaving no interest to be reached by a creditor.[21] *In re Kaufman,* 2001 OK 88, 37 P.3d 845, makes it clear that anti-assignment provisions in structured settlements prohibiting alienation of future payments are enforceable. Nevertheless, the same pronouncement recognizes that, in Oklahoma, contractual rights are presumed to be assignable.[22] Furthermore, the use of terms in a contract indicating that the beneficiary of any remaining interest on the death of a contracting party will pass to the party's heirs or estate forecasts an intention to make the contract assignable.[23] Where, as here, there is no provision either in the settlement agreement or in the annuity prohibiting assignment, the contract is subject to assignment.[24]

¶ 23 c) **Extant jurisprudence supports the determination that rights under the settlement agreement are assignable.**

¶ 24 Other courts addressing the issue of whether settlement agreements and annuities purchased to fund those contracts may be assigned agree with the position we take here. Those cases teach that: 1) the total absence of any anti-assignment language in either the structured settlement or the annuity contract payments under the contracts results in a determination that the contract may be assigned;[25] 2) where a settlement agreement provides for payment to the original beneficiary's heirs or estate, the payments are assignable;[26] 3) a settlement agreement will not be converted to an "annuity" to avoid the possibility of assignment;[27] 4) although the annuitant may not be the technical owner of the annuity, lack of any anti-assignment language supports a determination that the contract may be assigned;[28] and 5) if, as here, an annuity contract can be assigned by the owner, it may also be assigned by the annuitant.[29]

## CONCLUSION

¶ 25 Our answer to the first certified question is supported by the underpinnings of

**20.** *In re Kaufman,* see note 5, supra; *Johnson by & through Lackey v. Schick,* 1994 OK 109, ¶ 7, 882 P.2d 1059; *Hoffmann v. Barnett,* 1946 OK 325, ¶ 0, 178 P.2d 89.

**21.** *In re Kaufman,* see note 5, supra; *Sunrizon Homes, Inc. v. American Guar. Investment Corp.,* 1988 OK 145, ¶ 12, 782 P.2d 103.

**22.** *In re Kaufman,* see note 5, supra; *Earth Products Co. v. Oklahoma City,* see note 5, supra; *Minnetonka Oil Co. v. Cleveland Vitrified Brick Co.,* see note 5, supra.

**23.** *Earth Products Co. v. Oklahoma City,* see note 5, supra.

**24.** *Earth Products Co. v. Oklahoma City,* see note 5, supra; *Minnetonka Oil Co. v. Cleveland Vitrified Brick Co.,* see note 5, supra.

**25.** *In re Freeman,* 235 B.R. 121, 125 (M.D.Fla. 1999); *In re Estate of Powless,* 315 Ill.App.3d 859, 248 Ill.Dec. 403, 734 N.E.2d 111.

**26.** *Johnson v. Western Nat'l Life Ins. Co.,* 641 A.2d 47–48 (1994).

**27.** *Singer Asset Finance Co., L.L.C. v. Continental Casualty Co.,* 886 So.2d 1004–05 (Fla.App.2004), *rehearing denied* (2004).

**28.** *Settlement Funding, LLC v. Jamestown Life Ins. Co.,* 78 F.Supp.2d 1349, 1361 (N.D.Ga. 1999); *In re Jackson,* 311 B.R. 195, 199 (W.D.Mich.2004); *In re Brooks,* 248 B.R. 99, 102–03 (W.D. Mich.2000); *In re Berghman,* 235 B.R. 683, 689 (M.D.Fla.1999).

**29.** *Western United Life Assur. Co. v. Hayden,* 64 F.3d 833, 838 (3rd Cir.1995), *rehearing denied* (1995).

*Alkire v. King,* 1938 OK 282, 80 P.2d 309, recognizing the unity of a living person and the person's estate and our pronouncement in *Prudential Ins. Co. of America v. Glass,* 1998 OK 52, 959 P.2d 586, that an assignment of a life insurance policy is an ordinary contract between the assignor and the assignee and, as such, is interpreted under general contract principles is determinative of the issue. The answer to the second question certified is governed by well settled principles of Oklahoma contract law and is bolstered by extant jurisprudence.

**CERTIFIED QUESTIONS ANSWERED.**

WINCHESTER, V.C.J., LAVENDER, HARGRAVE, OPALA, KAUGER, EDMONDSON, TAYLOR, JJ., Concur.

COLBERT, J., Not Participarting.