OSCN Found Document:IN RE THE ESTATE OF JAMES

 

 
 

 
 IN RE THE ESTATE OF JAMES
2020 OK 7
Case Number: 115514; Cons. w/115516
Decided: 01/28/2020
As Corrected: February 3, 2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 7, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN RE THE ESTATE OF FRED FRANKLIN JAMES, SR., deceased,
and
In the Matter of the Creditor Claims of: PAMELA A. FLENER, Plaintiff/Appellee,
and
Glenn Flener, Plaintiff,
v.
F. NILS RAUNIKAR, Personal Representative of the Estate of Fred Franklin James, SR., deceased, Defendant/Appellant,
and
FRED FRANKLIN JAMES, JR., Appellant,
and
DALE BRYAN JAMES, Appellee.

CERTIORARI TO THE COURT OF CIVIL APPEALS DIVISION III

Honorable Jennifer H. McBee, Trial Judge

Â¶0 After Fred Franklin James, Sr.'s will was admitted for probate, two of this three children objected to it. One of the children (the daughter) asserted that some of the father's real property, a mechanic's/body shop, should belong to her because she had purchased it from her father pursuant to an oral contract. The other child (a son) asserted that he was a pretermitted heir because the proceeds of the insurance policy his father left to him in the will had beneficiaries inconsistent with the will. In a second, separate case, the daughter also filed a breach of contract/creditor/equitable action against the estate also, again asserting that she purchased the body shop from her father pursuant to an oral agreement with her father. The trial court consolidated the causes and determined that both children were pretermitted. We granted certiorari to address whether the children were pretermitted. We hold that heirs are not pretermitted because their beneficiary status on a non-probate asset differs from a bequest in a will. We reverse the trial court in part, and remand for proceedings consistent with our determination neither child was a pretermitted heir.

COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT REVERSED IN PART AND REMANDED
FOR FURTHER PROCEEDINGS CONSISTENT WITH OUR DECISION.

Clyde Muchmore, Oklahoma City, Oklahoma, Mary H. Tolbert, Oklahoma City, Oklahoma, for Appellants Fred Franklin James, Jr., and the Estate of Fred Franklin James, Sr., Deceased, F. Nils Raunikar, Personal Representative.

Douglas W. Sanders, Jr., Poteau, Oklahoma, for Appellant Fred Franklin James, Jr.

F. Nils Raunikar, Wilburton, Oklahoma, for Defendant/Appellant Estate of Fred Franklin James.

Douglas G. Dry, Tahlequah, Oklahoma, for Plaintiffs/Appellees Pamela A. Flener and Glenn Flener, and Bryan Dale James.

KAUGER, J.:

Â¶1 We granted certiorari to address whether two children who were named beneficiaries in a will were pretermitted heirs. We hold that heirs are not pretermitted because their beneficiary status on a non-probate asset differs from their bequests in a will. We reverse the trial court in part, and remand for proceedings consistent with our determination neither child was a pretermitted heir.

FACTS/PROCEDURAL POSTURE

Â¶2 This cause concerns two cases with some of the same parties and with some of the same issues which were consolidated in the trial court under one case number. Nevertheless, even though the cases were consolidated, the trial court issued two separate decisional orders regarding each case. The first case is: Case 1, a probate proceeding. The second case is: Case 2, a breach of contract/creditor's claim proceeding against the estate involved in Case 1. Determinations that the trial court made in Case 1 influenced determinations that the trial court made in Case 2.

a. Case 1: Probate Proceeding

Â¶3 The decedent, Fred Franklin James, Sr., primarily known as "Duke" (decedent/father/Duke), had three children: Fred Franklin, Jr. (Fred.), Bryan Dale James, (Bryan/son) and Pamela Ann Flener (Pamela/daughter). Duke, suffering from terminal cancer, executed a will on July 28, 2009. At that time he owned some real property, all of which is not all identified in the record, some bank accounts/Certificates of Deposits, and a life insurance policy. Included in his real property was a mechanics shop. In Article I of the will, he expressly acknowledged his three children. Article I provides in pertinent part:

I declare that I am not married and I further declare that I have three children, namely:

1) Fred Franklin James, Jr., a son

2) Bryan Dale James, a son; and

3) Pamela Ann Flener, a daughter. . . [1]

Â¶4 Duke did not divide his estate among his three children equally. Instead, he provided for the three children as follows:

1. to Fred Franklin James Jr., he left the funds from a checking account and two savings account which he had at Latimer State Bank in Wilburton, Oklahoma, all of his vehicles, all of his real property, and all of his mineral interests;

2. to Bryan Dale James, he left the proceeds from a Jackson National Life Insurance Policy to be held in trust with Duke's granddaughter as the trustee;

3. to Pamela Flener, all accounts held in the First National Bank of McAlester;

4. any residue and remainder to Fred Franklin, Jr.

He also left two CD's in Latimer State Bank in trust for his disabled sister Donna Jean James.

Â¶5 Duke died nearly eighteen months later after the execution of his will on December 16, 2010. The challenges to his will and division of property began thereafter. Fred Franklin, Jr., filed the will for probate on January 14, 2011. On March 3, 2011, the daughter and her brother, Bryan, filed a contest to the will in the District Court of Latimer County. They objected to its admittance to probate, and to their brother Fred being appointed as personal representative pursuant to the terms of the will. They alleged that their father could not have possibly been of sound mind when he made the will because he had been diagnosed with terminal colon cancer, was in severe pain, and was on pain killers. They also argued that because Fred had too much influence over their father during his lifetime, he was unqualified to serve as personal representative.

Â¶6 As evidence of too much influence, they showed that the decedent used another attorney to draft his will other than a long time attorney. They also argued that: 1) Fred, Jr. drove their father to the attorney's office where the will was drafted and arranged for the meeting, but Fred and the attorney both disputed their allegations; 2) Fred, Jr. had a tumultuous relationship with the siblings; and 3) Fred, Jr. was the stronger person in the relationship with his father. Fred, Jr. did work together with his father for many years and provided meals, transportation to medical appointments, and care for his father in his last years. However, there was no direct evidence that Fred, Jr. participated in procurement of the will.

Â¶7 Bryan also sought an increased share of the estate as an pretermitted child, should the will be admitted to probate. He acknowledged that he was mentioned in the will, but argues that he was omitted and entitled to an intestate share because the life insurance policy his father purported to leave him by creating a testamentary trust, was a non-probate asset.

Â¶8 The policy actually listed all three children as equal beneficiaries, rather than just Bryan. Bryan received $26,098.31 which was 1/3 of the proceeds of the policy (1/3 of $78,294.92) pursuant to being a co-listed beneficiary on the policy, rather than the entire amount of it as outlined in the will. Consequently, Bryan contends he took nothing under the will and was "omitted." Similarly, Pamela received $88,270.13 in CD proceeds directly from the bank because she was listed on CDs as a joint owner with her father, the decedent. Thus, the CD funds were also transferred outside of the will and probate process, and she received nothing else under the will.

Â¶9 On August 9, 2011, the trial court appointed a local attorney, F. Nils Raunikar, as special administrator and personal representative of Duke's estate, while the will contest unfolded. On July 16, 2012, Pamela and her husband Glenn Flener (collectively, the Fleners) filed a claim in Case 1 alleging that they had an oral contract with Duke to purchase real property known as the mechanic/body shop (the shop) that Duke bought in 1995. The Fleners alleged that they: 1) worked at the shop since Duke purchased it in 1995; 2) had completed the terms of an alleged oral shop purchase contract; and 3) were entitled to ownership of the shop after Duke's death.

b. Case 2: Breach of Contract/Creditor's Claim

Â¶10 A few months later, on September 28, 2012, the Fleners filed Case 2, a separate lawsuit as a breach of contract/a creditor's claim against Duke's estate also in Latimer County District Court, also asserting that essentially the same arguments that they had made in Case 1: 1) they had taken possession of the shop since Duke purchased it in 1995; 2) made improvements therein; and 3) had completed the terms for purchase under an alleged oral contract. Consequently, in Case 2, the Fleners asserted claims for breach of contract, and equitable estoppel based on part performance.[2] The special administrator counterclaimed for unpaid rent since the decedent's death. On October 01, 2012, Glenn Flener, son-in-law of the decedent, added a personal creditor's claim for work done on a 1971 Ford Torino totaling $10,317.32 after the special administrator had rejected the claim.

Â¶11 The deed for the shop property had remained in the decedent's name since it was purchased in 1994. The shop property appeared in his depreciation schedules on his income tax forms to the IRS. The decedent leased a portion of the property to a drilling company to store equipment, etc. for $700.00 a month, which he also reported as rental income on his taxes. The only evidence that the Fleners had an oral agreement to purchase the property was that they had possession of it, made improvements to it, and made payments to the father for a brief period in 1997-1998.

c. This Cause: Cases 1 and 2 Consolidated and the Evidence Therein.

Â¶12 Eventually, the cause proceeded to a trial on September 8-12, 15, and October 23, 2014. On June 20, 2015, the trial court signed an order regarding the probate proceedings which was filed the next day. In it, the trial court admitted the decedent's will to probate, but reserved the issues of the interpretation of the will and the determination of pretermitted heir for a separate dispositional order. On July 30, 2015, the trial court consolidated Case 2 with Case 1, in the "interest of more efficient judicial administration and disposition."

Â¶13 Even though they were consolidated, both the will contest and the creditors' claims proceeded, resulting in separate orders with evidence and issues overlapping in each case. On October 11, 2016, the trial court filed an order designating the status of heirs concerning Case 1, the probate proceedings. The trial court order provides in pertinent part:

. . . It is undisputed that Duke intended to provide for his three, natural children within the four corners of his Will. It is also apparent from the four corners of the Will that Duke's intended bequests to his three individual children were far from equal in nature, and that Fred James, Jr's share of the estate was intended to be greater in quantity than that of his two siblings. However, the bequests to Pamela Flener and Brian James failed for solely containing non-probate assets, a failed testamentary trust, and ambiguities as to form, quantity, and substance of the bequests. A separate testamentary trust intended to benefit Duke's sister, Donna James, also failed as the funding source was solely a non-probate asset held in joint tenancy with a right of survivorship in her favor.

Duke received legal counsel regarding the nature of his bequests. In order for operation of his Will, Duke would need to ensure that the source assets were correctly designated, titled, and not otherwise payable on death. After receiving this advice, Duke took no action to change the legal divestiture of these assets. By operation of contract law, these bequests failed as the source assets passed outside of probate.. . .

[It appears that the trial court treated the CDs bequested to Pamela as failed bequests under the terms of the will because they were jointly owned by Pamela and the decedent, and thus not part of the decedent's estate, and, like the insurance policy proceeds, were not subject to the will.]

Â¶14 Consequently, the trial court determined that the attempted bequests were non-probate assets which appeared to be inadvertent, resulting in two unintentionally omitted children entitled to a statutory share of their father's estate as natural, pretermitted heirs. It also held that when any testator unintentionally omits to provide in his will for any of his children, such child must have the same share in the estate of the testator as if he had died intestate. The trial court also held that the common law doctrine of ademption[3] was inapplicable to this cause because the certificate of deposit and the life insurance policy did not pass to the pretermitted heirs prior to Duke's death.

Â¶15 On October 11, 2016, the trial court, apparently relying on its decision regarding Case 1, filed an order concerning Case 2, regarding the creditors' claims. In it, the trial court found that: 1) the Fleners were entitled to a refund from the estate for $17,100.00 for monetary payments they had made to the decedent between 1997 and 1998; 2) the estate also owed the Fleners the value of improvements, if any, which may have resulted in the shop's increased value; 3) the Fleners could retain possession of the shop property rent free because as a pretermitted heir, Pamela Flener was entitled to an intestate share of the estate, resulting in a tenancy in common; and 4) the shop property was part of the estate and would remain part of the estate until distribution. The estate appealed both the Case 1 and Case 2 orders and on May 3, 2019, the Court of Appeals, in an unpublished opinion, affirmed the trial court. We granted certiorari on October 29, 2019, to address the pretermitted heir issue.

A NAMED HEIR IN A WILL IS NOT PRETERMITTED BECAUSE THEIR
BENEFICIARY STATUS OF A NON-PROBATE ASSET DIFFERS FROM THE
BEQUEST IN THE WILL.

Â¶16 The brother and sister argue that the fact that they were named in the will is irrelevant. Rather, it is the fact that because their father did not properly change the beneficiaries on the CD and life insurance policy to match the will they were "unprovided" for in the will and thus pretermitted. The estate argues that the daughter received $88,270.13 directly from the First National Bank of McAlester payable on death from the Certificates of Deposits and that was exactly what the testator devised to her in the will. The son received $26, 098.31 which was 1/3 of the $78,294.92 life insurance policy, because he, along with the other two children were named beneficiaries on the policy. While this may not have been what was devised in the will, he was expressly provided for in the will and not pretermitted.

Â¶17 Disposing of property is an inalienable natural right throughout a person's lifetime.[4] However, the method of disposition of property after death and the right of inheritance are statutory.[5] The Oklahoma Legislature provided for wills and trust as a means of disposing of one's property at death.[6] The Oklahoma pretermitted heir statute, 84 O.S. 2011 Â§132, provides a statutory method of inheritance for children whom a testator unintentionally fails to provide for or name in a will. It is not a limitation on a testator's power to dispose of his or her property. Rather, it is an assurance that a child is not unintentionally omitted from a will.[7] It provides:

When any testator omits to provide in his will for any of his children, or for the issue of any deceased child unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator, as if he had died intestate, and succeeds thereto as provided in the preceding section.

The pretermitted heir statute does not secure a child with a minimum statutory share of a parent's estate upon the death of a parent.[8] The purpose of the statute is merely to protect an issue's right to take, unless the will gives a clear expression of intentional omission.[9] By the terms of the statute, it must "appear" that the testator intended to leave his child with nothing.[10]

Â¶18 Cases are legion holding that the prime purpose in construing a will is to arrive at and give effect to the intent of the testator.[11] Since 1928, this Court has consistently interpreted this statute to the effect that an intentional omission to provide for the testator's issue must appear clearly within the four corners of the testamentary document itself.[12] In other words, was there an omission of the will contestant completely, either by name or class? Is there any language in the will manifesting the omission as an intentional act?[13]

Â¶19 Even the disposition of the entire estate does not alone evince an intent to omit a child or a deceased child's issue. Intent to disinherit must appear upon the face of the will in strong and convincing language.[14] It is also well established that the intent to disinherit must appear within the four corners of the testamentary document, and that extrinsic evidence is inadmissable unless ambiguities appear on the face of the will.[15]

Â¶20 We have previously noted that there are many ways a person can express the intention to omit to provide for his or her children, including: 1) expressly state that the named child is to receive nothing;[16] 2) provide only a nominal amount for the child who claims to be pretermitted;[17] 3) name a child, but then leave them nothing;[18] 4) declare any child claiming to be pretermitted take nothing;[19] or 5) specifically deny the existence of members of a class to which the claimant belongs coupled with a complete disposition of the estate.[20]

Â¶21 None of these ways were expressed in this cause. The testator did not state that his children were to take nothing or provide only a nominal amount to them. He did not name a child, but leave it nothing, nor declare any child was to take nothing. He did not specifically deny the existence of a child coupled with complete disposition of the estate. To the contrary of an express omission, the testator expressly listed all three of his children and expressly left all three children something in his will. There were no children pretermitted in this will. Rather, the problem lies in how he handled his affairs after the wills were created, and apparently against the advice of counsel.

Â¶22 A certificate of deposit (CD) and insurance policy are contracts interpreted under contract principles. A CD, unless on its face shows an interest in one's estate is not part of the estate subject to probate.[21] Similarly, neither is a life insurance policy unless the policy names the estate as beneficiary.[22] One child was left a portion of the proceeds of a life insurance policy and the other child the proceeds of CDs -- both of which were designated as beneficiaries outside of the will and thus outside of probate.

Â¶23 Either or both of these items could have been made part of his estate had the testator designated his estate as the beneficiary. However, because he did not designate the estate as the beneficiary, the items passed outside of his estate pursuant to the designations as he listed directly on the life insurance policy and the CDs. While this inaction may have resulted in an amount different than what the children would have actually received from the amounts the testator acknowledged in his will, it did not render the children pretermitted entitled to the statutory protections as a pretermitted child. Such a failed bequest to a named heir does not, as a matter of law, render the heir pretermitted.

Â¶24 In Crump's Estate v. Freeman, 1980 OK 80, 614 P.2d 1096, we held that a granddaughter was pretermitted. The testator totally omitted one of his granddaughters from his will. She was not mentioned at all -- either by name or class. Nor was there any ambiguity on the face of the will regarding her omission being intentional or unintentional. The Court said:

Â¶8 Our pretermitted-heir statute, as interpreted since 1928, does more than raise a presumption that the testator unintentionally omitted to provide for a child or issue of a deceased's child. It calls upon a testator who wishes to disinherit his issue to affirmatively and clearly state his intention to exclude such person. Our interpretation of Â§ 132 provides an efficient, safe and easy method to determine the testator's intention. Thousands of wills have been written in reliance on the continued expression of this court over a long period of time. A departure from precedent would, at this late date, be most inadvisable and inappropriate. (Citations omitted.)

Â¶25 The same principle applies here. If a testator wishes to bequeath a CD or life insurance policy pursuant to a will, the testator must make certain that the estate is the beneficiary listed on the CD or life insurance policy. Otherwise, they will pass according to their terms and pursuant to the will. If this were not the case, every time people made a change to their bank accounts or life insurance, they would have to re-write their will to ensure that the changes were identical in the will for the changes in the bank account or life insurance policy to be effective. Here, the testator was advised of the ramifications of his estate planning and he chose to leave the will intact. There is a presumption that he was satisfied with the distribution of his assets.

Â¶26 We agree with the Crump's Estate Court, supra, thousands of wills, CDs and life insurance policies have been written in reliance on the continued expression of this court over a long period of time. A departure from this precedent would, at this late date, be inadvisable and inappropriate. Accordingly, we reverse the trial court in part, and remand for proceedings consistent with our determination neither child was a pretermitted heir.

CONCLUSION

Â¶27 Testators have the freedom to dispose of their estate as they wish.[23] A testator also has a responsibility to take the appropriate, legal, and necessary steps to ensure what has been done is necessary for that disposition to happen as they wish. In this case, it was the testator's responsibility make sure that non-estate assets such as life insurance policies and bank accounts were designated as he stated in his will -- if that is how he wanted them to be bequeathed. After receiving advice of counsel, he apparently was satisfied with the distribution of his assets.

Â¶28 Because they were actually designated differently than indicated in his will does not render their beneficiaries pretermitted. The trial court based the order on October 11, 2016, on its finding that a son and daughter were both pretermitted heirs. While the daughter may be entitled to a refund for money she paid to the decedent or improvements she made to the shop property, because she was not pretermitted she is not entitled to an intestate share of the shop property. Consequently, we remand this consolidated cause for proceedings consistent with our determination neither child was a pretermitted heir.

COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT REVERSED IN PART AND REMANDED 
FOR FURTHER PROCEEDINGS CONSISTENT WITH OUR DECISION.

GURICH, C.J., DARBY, V.C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS, KANE, ROWE, JJ., concur.

COLBERT, J., not voting.

FOOTNOTES

[1] The only arguable "ambiguity" in the will appears to be nothing more than a typographical error because immediately after the testator declares that he has three children and names them, the will states that "I declare I have no living or deceased, natural or adopted child or children."

[2] They also alternatively asserted a claim for adverse possession which the trial court dismissed on January 8, 2014.

[3] For a discussion of ademption, see generally,Â In re Van Duyne's Estate, 1951 OK 299, 239 P.2d 387. Ordinarily, to make a specific legacy effective the property bequeathed must be in existence and owned by the testator. Ademption comes into play when a specific bequest has been previously sold or disposed of prior to death. The question becomes whether the beneficiary should get the proceeds of the sale because the actual property was no longer owned by the testator at the time of death.

[4] Estate of Jackson, 2008 OK 83, Â¶15, 194 P.3d 1269; Snodgrass v. Snodgrass, 1924 OK 597, Â¶10, 231 P.237.

[5] Estate of Jackson, see note 4, supra; Snodgrass v. Snodgrass, see note 4, supra.

[6] Title 84 O.S. 2011 Â§44; 60 O.S. 2011 Â§175.1; 84 O.S. 2011 Â§301.

[7] Estate of Jackson, see note 4, supra; Estate of Hoobler, 1996 OK 56, Â¶8, 925 P.2d 13.

[8] Estate of Jackson, see note 4, supra; Estate of Hoobler, see note 7, supra.

[9] Estate of Hoobler, see note 7, supra; Crump's Estate v. Freeman, 1980 OK 80, Â¶3, 614 P.2d 1096.

[10] In the Matter of the Estate of Hester, 1983 OK 93, Â¶4, 671 P.2d 54.

[11] Estate of Hester, see note 10, supra at Â¶9, and citing for e.g., In re Estate of Bovaird, 1982 OK 48, 645 P.2d 500; Miller v. First National Bank & Trust Co., 1981 OK 133, 637 P.2d 75; Bridgeford v. Estate of C.E. Chamberlin, 1977 OK 206, 573 P.2d 694.

[12] Weaver v. Laub, 1978 OK 242 Â¶6, 574 P.2d 609; Spaniard v. Tantom, 1928 OK 202, Â¶0, 267 P.623.

[13] Estate of Severns v. Severns, 1982 OK 64, Â¶6, 650 P.2d 854.

[14] Estate of Severns v. Severns, see note 13, supra.

[15] Estate of Hester, see note 10, supra; Estate of Severns v. Severns, see note 13, supra.

[16] Estate of Hester, see note 10, supra at Â¶10.

[17] Estate of Hester, see note 10 supra Â¶10; Bridgeford v. Estate of C.E. Chamberlin, see note 11, supra.

[18] Estate of Hester, see note 10, supra at Â¶10; Pease v. Whitlach, 1964 OK 264, Â¶7, 397 P.2d 894.

[19] Estate of Hester, see note 10 supra at Â¶10, Dilks v. Carson, 1946 OK 108, 168 P.2d 1020.

[20] Estate of Hester, see note 10 supra at Â¶10; Dilks v. Carson, see note 19, supra. We have also held that the intention to disinherit children can appear on the face of a will within which no mention of the children has been made by name or class. Compare, In Re Adams' Estate, 1950 OK 204, 222 P.2d 366 with Estate of Glomset, 1976 OK 30, 547 P.2d 951 and Estate of Severns v. Severns, see note 13, supra.

[21] See, Estate of Kizziar, 1976 OK 114, Â¶5, 554 P.2d 791.

[22] See, Randall v. Travelers Cas. & Sur. Co., 2006 OK 65, Â¶25, 145 P.3d 1048; Prudential Ins. Co. of America v. Glass, 1998 OK 52, Â¶13, 959 P.2d 586.

[23] Estate of Jackson, see note 4, supra; Snodgrass v. Snodgrass, see note 4, supra.

Â