In re ADAMS' ESTATE.
ADAMS et al. v. ADAMS.

No. 34172.    July 18, 1950.

Rehearing Denied Sept. 19, 1950.

222 P. 2d 366.

Gray & Poindexter, of Ardmore, for plaintiffs in error J. C. Adams, J. S. Adams, Homer Adams, and Louis Adams.

Sam Y. Colby, of Madill, for plaintiffs in error P. G. Chapman, Lula Chapman, Paul Ray Chapman, James Chapman, and Joann Chapman.

Don Welch, Dan M. Welch, and Don E. Welch, all of Madill, for defendant in error.

GIBSON, J. This appeal involves the construction of a joint and mutual will of residents of Texas who died seized of lands lying in Marshall county, Oklahoma. The question is the ownership of said lands, and the issue is between a child who is made sole residuary devisee under the will, and claims title thereunder, and other children of the testators and heirs of a deceased child of testators, who claim distributive interests under the statute of descent and distribution on authority of Tit. 84 O. S. 1941 §132, which provides:

"When any testator omits to provide in his will for any of his children, or for the issue of any deceased child unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator, as if he had died intestate, and succeeds thereto as provided in the preceding section."

The will was probated in Texas and later, on ancillary proceedings, it was probated in Marshall county where the issues arose on petitions for distribution which, on appeal, were tried de novo in the district court where the will was sustained and distribution decreed in accordance with the terms thereof.

The will, omitting the attestation clause, and a codicil which is unimportant, is as follows:

"The State of Texas,
"County of Grayson.
"Know All Men by These Presents:
"That we, J. A. Adams and Isa B. Adams, husband and wife respectively, residing in the city of Sherman, Grayson Co., Texas, each being desirous of arranging all earthly affairs while we each have the strength and the capacity so to do, do hereby make, declare and publish this, our last will and testament, and the last will and testament of each of us, and for such we do declare and provide as follows:

"1.

"It is our desire, and the desire of each of us, and we do so provide, that as soon as practicable after our deaths and after the death of each of us, all legal debts, if any, be paid by our executors hereinafter named, paying the same as far as possible, out of personal property.

"2.

"We hereby devise and bequeath to the survivor of us absolutely and in fee simple all land and personal property and property of all kinds wherever situated. That is, if J. A. Adams, dies first, then all property of all kinds wherever situated owned by us or either of us shall pass to and is hereby devised to Isa B. Adams in fee simple, and if Isa B. Adams dies first, all such property is devised to the said J. A. Adams in fee. At the death of the

survivor any and all of said property then on hand or undisposed of is hereby devised in fee simple to Leo Hartman, of Sherman, Texas, who has nursed J. A. Adams a number of years. This last provision shall also apply to any and all property purchased by the survivor from proceeds of the sales of property by the survivor and to property acquired by such survivor from property on hand at the death of the first of us to die.

"3.

"The survivor is hereby appointed executor of the will of the first of us to die and our son, Louis Adams, of Wichita Falls, Texas, is hereby appointed executor of the will of the survivor. Neither shall be required to give any security as such and the courts shall have nothing to do with the settlement of either of said estates other than to probate this will and have returned an inventory, appraisement and list of claims of the respective estates. It is contemplated that this will will be probated first as the will of the first of us to die and then, after the death of the survivor as the will of the survivor.

"We hereby request those whose names are signed below as witnesses to witness this will.

"Witness our hands at Sherman, Texas, on this the 23rd day of July, A. D., 1943.

"(Signed) J. A. X Adams
(his mark)
"Isa B. Adams

"Witnesses:
"F. C. Wolfe (Signed)
"Florence Bryant, (Signed)"

At the time of the execution of the will the testators had six living children, to wit: Leo Hartman Adams (the devisee), Louis Adams (named as executor), Homer Adams, J. S. Adams, J. C. Adams and Louise Chapman, nee Adams, all of whom survived the decedents. Said Louise Chapman died intestate, survived by her husband, P. G. Chapman, who appears in person, and the minor children, who appear by Sam Y. Colby, guardian ad litem.

Defendant in error, Leo Hartman Adams, filed petition for distribution in accordance with the terms of the will. The plaintiffs in error filed three petitions for distribution as follows: one by Louis Adams, one by J. C. Adams, J. S. Adams and Homer Adams, and the other by the Chapman group, and they filed in like manner their petitions in error herein. In each of the petitions in error there are assigned as errors (1) that the court erred in admitting incompetent, irrelevant and immaterial evidence, and (2) the judgment is contrary to the law and the evidence.

The first question presented is whether the intrepretation of the will is to be governed by the law of Texas, the domicile of the testators, or that of Oklahoma, where lies the real estate involved. This question is not an open one because foreclosed by statute, Tit. 84 O. S. 1941 §20. The statute was construed in Bacus v. Burns, 48 Okla. 285, 149 P. 1115.

The appeal of Louis Adams, who is named as executor in the will, involves and turns upon an issue not involved in the other appeals, and that is whether the fact of his being so named is sufficient to disclose an intent to disinherit him. His contention is that such fact is insufficient to show such intent. He cites no authority in support of the contention. The contention overlooks the fact that his being so named, and thus in the mind of the testator, precludes the idea that he was overlooked which is an essential to the application of the statute (Tit. 84 O. S. 1941 §132). The courts of other states whether construing the Missouri type statute or the Massachusetts type, of which the Oklahoma statute is one, appear to be in complete accord in holding that a child named in the will, and not provided for therein, stands disinherited. See Anno. cases cited in 152 A.L.R., p. 725. The force of such unanimity is given emphasis in Page on Wills, vol. 1, pp. 975, 978, sec. 528, as follows:

"Naming a child is, of course, sufficient to show testator's intention that

the child shall receive nothing further than is given it by the will."

Though there has been no decision of the question in Oklahoma we have given tacit recognition thereof. In Re Revard's Estate, 178 Okla. 524, 63 P. 2d 973, there is said:

"There being no mention of the grandchildren in the will, and it not appearing from the face thereof that the omission was intentional, . . ."

We hold that the fact Louis Adams was so named is sufficient to make it appear upon the face of the will that the omission to provide for him therein was intentional.

The contentions of plaintiffs in error, other than Louis Adams, are substantially to the following effect: (1) they are not provided for nor mentioned in the will, nor does there affirmatively appear on the face of the will an intention to disinherit them, and (2) there is no ambiguity in the will, and therefore the evidence introduced was incompetent, irrelevant and immaterial.

Defendant in error's contentions are substantially as follows: (1) the intent to disinherit affirmatively appears upon the face of the will by necessary inference or unavoidable implication: (2) if the intent to disinherit does not so appear there arises on the face of the will ambiguity as to testators' intention in that respect and therefore the evidence was properly admitted; and (3) if the intent to disinherit does not so appear and no ambiguity appears upon the face of the will an ambiguity arises thereon by evidence dehors the will when it appears that there are children who are neither mentioned nor provided for in the will and that the holding of this court to the contrary, in Spaniard v. Tantom, 131 Okla. 75, 267 P. 623, is unsound and should be overruled.

We consider, first, the question whether the omission to provide for the plaintiffs in error appears upon the face of the will to be intentional.

The question turns on the issue whether the intention to omit appears upon the face of the will by inference drawn from the language thereof. We think that drawing such inference where warranted is not only within the power of the court but becomes its duty as well. The question of such intention is clearly one of construction. With reference to the duty of the court, and the method by which such intention is to be ascertained, we stated in Cunningham v. Fidelity Nat. Bank, etc., 186 Okla. 429, 98 P. 2d 57, as follows:

"The cardinal rule of construction is to ascertain, if possible, the intent of the testator. Sections 1579, 1580, O. S. 1931 (84 Okla. St. Ann. §§151, 152); 69 C. J. 52; 28 R. C. L. 211. The intent must be ascertained from the entire instrument. Porter v. Porter (1923) 97 Okla. 231, 222 P. 971; 69 C. J. 104; 28 R. C. L. 220. And it will be held valid whenever possible. 21 R. C. L. 295, 329. It is also important to observe that the intention of the testator need not be declared in express terms in the will, but it is sufficient if it can be clearly inferred from the particular provisions. 28 R. C. L. 218, §177."

The statute in no wise impairs or limits said rule of construction and for the court to hold that some particular expression or mention is necessary would not only add to the statute, which is beyond the power of the court, but would be abortive of the testator's intentions by placing an unwarranted restriction upon the method of its ascertainment.

In other jurisdictions it is well established that the intent to omit may be gathered by inference. In Page on Wills, vol. 1, p. 977, sec. 528, there is said:

"In determining whether the omission of a child is intentional or not, no set form of words, indicating testator's intention to omit such child, is requisite. The will is to be taken as a whole; and if it appears from the entire instrument that testator intended to omit such child, the statute does not apply. . . .

"It is not necessary that testator should name his child, or even refer, in terms, to the fact that it is his child."

There are many cases wherein the intention to omit was gathered by inference. In Wilder v. Goss, 14 Mass. 357, there is said:

" . . . Wherever, then, it may be fairly presumed, from the tenor of the will, or of any clause in it, that the testator intentionally omits to give a legacy or to make a devise to his child, or grandchild whose parent is dead, the court will not interfere."

In the Matter of the Estate of Trickett, 197 Cal. 20, 239 P. 406, it is said:

"The general scheme of the will and the intent of the testator as manifested by the language of the will compel the conclusion that the testator failed to provide for appellants not because he was oblivious of their existence but, rather, because he did not desire them to share in his estate."

In Draper v. Draper, 267 Mass. 528, 166 N. E. 874, there is said:

"It is apparent on the evidence that, whether or not she believed this son, whose picture hung on the walls of the room in which the will was written, to be dead, she had a present conscious purpose to give all her property to the widow and children of her son Ernest. An intent thus appears to omit provision for every one except those mentioned in the will."

The case of Hawhe v. Chicago & W. I. R. Co. et al. (Ill.) 46 N. E. 240, involved the right of an unborn child, but the statute applicable thereto is the same as the Oklahoma statute applicable to living children which is here involved. We quote:

" . . . Here, if the testator had died intestate, the complainant would have inherited one-third of the land in question, subject to the dower of his mother, and it is claimed by him that it was not intended by the testator by the will to disinherit him; hence he is entitled to recover in like manner as if the testator had died intestate. The testator, in his will, made no allusion whatever to any of his children,—those then born or those that might thereafter be born,—but devised all of his property to his wife, and in doing so used language that is very significant, meaning more than a simple devise. The will declares: 'I hereby will, devise, and bequeath all of my estate, real, personal, and mixed, and of every kind whatsoever, to my beloved wife, Mary H. Hawhe, giving my said wife full power and authority to collect all debts and to compromise all debts due me, to pay all my debts, to sell any and all of my estate, both real and personal, and to convey the same by bill of sale and by deed of conveyance as fully, amply, and completely as I could have done in my lifetime.' Language could not have been used which would more clearly express an intention that the wife, and she alone, should take and hold the testate's estate to the exclusion of all others, than the language here employed. If the testator had inserted a clause in his will that no other person should have any portion of his estate, such a provision would have excluded the two children then born, and those that might thereafter be born; and yet such a provision would not have made the intention of the testator more definite and certain that the wife should have his entire estate, as declared in the will. The testator, in drafting his will, did not stop by simply devising all of his estate to his wife, but, in order to remove all doubt in regard to his intention, he went further, and declared: 'Giving my said wife full power and authority to sell any and all of my estate, both real and personal, and to convey the same by bill of sale and by deed of conveyance as fully, amply, and completely as I could have done in my lifetime.' Why should he insert this language unless he intended that his wife, and she alone, should have his entire estate, to the exclusion of all others. There is another significant fact which has an important bearing on the construction of the will. At the time the will was executed by the testator he had two children then living, one four and the other two years old. These children were excluded from taking any portion of the testator's estate by the will. Is it reasonable to believe

that the testator intended to exclude these two infants, and not at the same time exclude another child, to be born within the next two months after the will was executed? It seems plain, if the testator had intended to make any distinction between his children then born or unborn, he would have inserted a provision in his will manifesting that intention. In order to disinherit appellant, the testator was not required to state the fact in express terms in the will. It is enough that the intention appears from the will upon consideration of all of its provisions."

Other cases to like effect in principle are cited and relied on by defendant in error.

The contention of plaintiffs in error is that in absence of provision for or mention of child in the will the intention to disinherit must appear expressly in, and not by inference from the language thereof. In support of the contention there is cited Burkhart et al. v. Rogers et al., 134 Okla. 219, 273 P. 246, and it is urged that the case is decisive of the issue here involved.

By reason of the difference in the wills involved in that case and herein, the decision in the Burkhart case cannot be properly considered as a precedent nor persuasive herein. As stated in Page on Wills, vol. 1, p. 977, sec. 528:

" . . . Whether testator intends to omit the child or not, is a question of construction; and, like other questions of construction, specific precedents are of little value as the question involves the meaning of the will as a whole, and not the meaning of separate phrases. Expressions in different wills which are almost identical, may have very different meanings in view of the context."

The will involved in Burkhart v. Rogers, supra, was a joint and mutual will of husband and wife, but the controlling issue was the validity of the will as a whole and not one of distribution thereunder. The will neither provided for nor mentioned a child of the husband by a former marriage and the existence of the child had not been disclosed to the wife at the time of the execution of the will. The court held that by reason of the omission of the child it would have taken as heir had the husband died first and with the result that the wife, as devisee under the will, could not have received the entire estate as contemplated by the will and to which she was entitled by reason of the compact quality that obtains under a joint and mutual will. The court held that it could not be contemplated that the wife would have willingly executed the will under such circumstances and that it would be tantamount to prepetrating a fraud to hold that the instrument constituted her will. The court there does not discuss the question of how the intent to disinherit is to be gathered nor is it reflected in the fact of the conclusion reached, therefore, the decision can throw no light on the issue here except in its recognition of the compact feature of joint and mutual wills to which we will advert later.

A case, not cited but in point in principle, is that of Courtney v. Daniel, 124 Okla. 46, 253 P. 990, where the testator, without provision for or mention of the children, gave all of his property to his wife "absolutely, free and clear of any condition or restriction whatever." It was there contended that the intent to disinherit the children appeared upon the face of the will. The court held, and properly, that no such intent appeared. The mere fact of the devise cannot rebut the statutory inference of unintentional omission. If, however, there appeared therein, expressly or by inference, that he had confidence in his wife to care for and support the children, and was actuated thereby in making the devise to her, the intent to disinherit would necessarily arise as an inference therefrom. In re Read's Will (Wis.) 193 N. W. 382.

Concerning a quality of joint and mutual wills the evidentiary force of which is pertinent here, there is said in Burkhart v. Rogers, supra, the following:

"The disposition of property by a reciprocal will was again under consideration in the case of Frazier v. Patterson (Ill.) 90 N. E. 216. A husband and wife each owned land and a joint will was made devising a life estate in the survivor, and at the death of the survivor to a daughter, and after her death to her issue. The husband died first and his will was probated, and the widow took possession of the property until her death. The daughter preceded the mother in death and left children surviving her. After the death of the daughter the widow executed a will wherein she made a different disposition of her property from that provided in the joint will. On appeal the only issue was whether the joint will on its face proved a compact or agreement to make a will mutually disposing of their property, each for and in consideration of the will of the other. In reference to this matter there is a very learned discussion and the court said:

" 'A will that is both joint and mutual is one executed jointly by two or more persons, the provisions of which are reciprocal, and which shows on its face that the devises are made one in consideration of the other. . . . Mutual wills—that is, where two persons execute wills reciprocal in their provisions but separate instruments—may or may not be revocable at the pleasure of either party, according to the circumstances and understanding upon which they were executed. To deprive either party of the right to revoke such mutual will it is necessary to prove, by clear and satisfactory evidence, that such wills were executed in pursuance of a contract or a compact between the parties, and that each is the consideration for the other; and even in cases where mutual wills have been executed in pursuance to a compact or agreement between the parties, the law appears to be well settled that either party may, during the lifetime of both, withdraw from the compact and revoke the will as to him. A joint and mutual will is revocable during the joint lives by either party, so far as relates to his own disposition, upon giving notice to the other, but it becomes irrevocable after the death of one of them if the survivor takes advantage of the provisions made by the other. . . . If two persons make wills, each devising his property to the other, there is no necessary inference that the wills were the result of any mutual or reciprocal agreement or understanding. Such wills might be executed without either party knowing that the other had executed his will; but, where the parties execute their wills by the same instrument, it is not possible that such course could be adopted without some previous understanding or agreement between them. Each would necessarily know what disposition the other had made of his property. This inference is especially strong where the parties are husband and wife, and where they have a common interest in the welfare of the devisees. In the case at bar the parties had one daughter. They had a mutual interest in her. They desired that she should have the enjoyment of their real estate during her life and at her death her children should take it in fee. If evidence of a mutual compact is necessary in such case, the evidence is afforded by what the parties did. We cannot see how the situation would be any different if witnesses had testified that they heard this husband and wife discuss what disposition they would make of their respective estates, and that they agreed with each other that they would make a joint will such as they did make. The fact that they made such will is satisfactory proof to our minds that it was done in accordance with their mutual compact to dispose of their property in this manner.' "

It is the fact that each, as a matter of right, is entitled to take the whole of the devise contemplated that is the basis of the court's holding the Burkhart will to be an abortion and, by the same token, the intent of the testator in making such devise must be that the devisee is to take to the exclusion of any and all who are not provided for in the will.

The effect of the several quoted constructions of the Massachusetts statute, and of others like ours of the same type, is that the intent to disinherit obtains where it appears that the gift to one is intended to be to the exclusion of all others, and that grounds for an inference of such intention obtain where

there is reflected a present conscious purpose to give the entire estate to one, or where there obtains in the testator's mind a plan or purpose the very accomplishment of which negatives the idea that any other than those named as devisees could consistently share therein. Considering the will herein, in the light of such reasoning, we are forced to the conclusion that the testators' intention to omit the children not provided for is beyond question and that to hold otherwise would do violence to the testators' intent by applying an unreasonable construction for which there is no legal warrant. Gormly v. Edwards, 195 Okla. 123, 155 P. 2d 985. We have herein every evidentiary basis that obtained in the cited cases and more—the will which by reason of its joint and mutual character precludes, as a matter of law, the inference that either testator, ´in any event, could, honestly or effectively, entertain an intent to make any other disposition. The right of parents to make such will can be in no wise impaired by the provisions of the pretermission statute. And, too, the intent to disinherit the children not provided for is reflected in the language of the will.

The words which identify the devisee as the one of the children who had rendered a service denote that the devise to him of the entire estate is the expression of a mutual duty to reward him for the peculiar filial service rendered. If, in their opinion, the entire remaining estate was but a just reward for such service, is it reasonable to suppose they would have considered a less interest sufficient if it appeared that those not provided for had been in the testators' mind when the will was made? He did have Louis Adams in mind but made no provision for him. Upon what theory is it to be inferred that those not mentioned would have fared better? The only reasonable inference to be drawn, and the one which we hold to be controlling, is that each testator intended that the survivor should take the entire estate of the other to the exclusion of all others but

subject to the further devise of what remained, and that, upon the death of the survivor, the residuary devisee named should take to the exclusion of all others, and that the intent to disinherit all the children other than the one made devisee appears affirmatively, by inference, upon the face of the will.

Since the evidence introduced could only tend to confirm the correctness of the conclusion to be reached independently thereof, the error, if any, in its admission is harmless.

In view of the conclusion reached we consider it unnecessary to consider the question whether there was ambiguity in the will or review our holding in Spaniard v. Tantom, supra, the correctness of which is challenged.

*Judgment affirmed.*

ARNOLD, V. C. J., and CORN, HALLEY, JOHNSON, and O'NEAL, JJ., concur.