In the Matter of the **ESTATE** of James G.
**NEWKIRK,** Deceased.

**Mary Lake NEWKIRK and Joan Jancik,**
Contestants,

v.

**Pauline KNIGHT, Proponent.**

No. 41971.

Supreme Court of Oklahoma.

June 17, 1969.

Ed Shipp, Idabel, for contestants.

Ed R. LeForce, Idabel, Joe Stamper, Jerry Otis, Antlers, for proponent.

BERRY, Vice Chief Justice.

This appeal from a judgment in a will contest presents the issue whether an improper, illicit, or meretricious relationship existing between the principal beneficiary and testator is sufficient to require finding of undue influence in execution of the will?

May 14, 1952, James G. Newkirk executed a will, pertinent provisions of which stated:

"SECOND: I give and devise to Miss Pauline Knight, all of my property, real, personal and mixed of every kind wherever situated, whether vested or contingent at the time of my death, to be absolutely hers, free and clear of any conditions or restrictions whatever. I am a widower, not married now.

"Third: I have a daughter, Joan Jancik, who is married, and for whom I have heretofore provided, and I do not wish her to participate in my will.

"Fourth: I hereby appoint and designate Miss Pauline Knight, sole executrix, without bond, of this my last will and testament."

November 6, 1964, Joan Jancik filed petition in McCurtain County, Oklahoma, alleging death of James G. Newkirk on October 30, 1964, and her right as deceased's daughter to appointment as administratrix. Contemporaneously her mother, Mary Lake Newkirk, filed waiver of her prior right and joined in request for Jancik's appointment. After hearing the county court issued letters of administration to Joan Jancik who, as a non-resident, filed appointment of an agent. These parties, plaintiffs in error, hereafter are denominated contestants.

On November 17, 1964, defendant in error, hereafter the proponent, filed petition for probate of deceased's will, alleging her interest as executrix and sole legatee under the will. Proponent also asked revocation of letters of administration previously issued, and an order rescinding and cancelling these letters was entered.

Contestants then filed contest against probate of the will alleging as surviving wife and daughter, to be deceased's sole and only heirs at law, and denying the fact and validity of the will. Alternatively contestants asserted if will was executed this resulted from fraud, undue influence and domination exercised by proponent; and, deceased had been induced to execute same because of proponent's exercise of domination and undue influence imposed upon deceased by reason of the unlawful, confidential relationship. Contestants alleged Mary Lake Newkirk was the surviving wife, which fact would have been known to deceased had he been of sound and disposing mind. Further, no provision had been made for contestant Jancik, which fact deceased knew if of sound mind, and terminology of the will failed to preclude Jancik's right to participate in the estate.

Contestant also alleged she was deceased's lawful wife both when will was executed and at time of testator's demise, and therefore elected to take under the law without regard to whether will was admitted to probate. There is no dispute as to contestant's right to inherit under the statute as surviving spouse. There was fur-

ther prayer, in event will was admitted to probate, that proponent not be appointed executrix because of conflicting interests between the parties.

After hearing and consideration the county court found all issues in favor of admission of the will to probate; the will had been executed according to law in all particulars by deceased, who was of sound mind and not acting under duress, influence, or domination and control of any person when this will was executed. Contestants appealed to the district court from the order admitting the will to probate and granting letters testamentary to proponent.

This being a probate appeal, and governed by rules applicable to equitable proceedings, the Supreme Court will examine the entire record and weigh the evidence to determine whether the judgment is clearly against the weight of the evidence or contrary to applicable law.

Extended narration of the testimony is unnecessary. The record fairly establishes deceased was an energetic, hard working, strong willed individual, who unequivocally made his own decisions without compromise, or advice sought or taken from others. The record is devoid of evidence tending to show lack of mental capacity or physical abilities. Even contestant testified deceased was not insane, and was competent in 1961 when he executed a deed to Texas property as contestant's husband. There is absolutely no evidence deceased was not capable or lacked testamentary capacity when this will was executed.

Contestant's evidence established the fact of marriage in 1915 and birth of a daughter, contestant here. During their early marriage deceased engaged in construction work, and was assisted by his wife. In 1933 the parties moved to Texas and engaged in farming and livestock business until 1947 when they moved to Hereford, Texas. Proponent, contestant's cousin, became acquainted with deceased in 1941 and the meretricious relationship began. When the parties moved to Hereford proponent followed. In January 1951 the parties sold their holdings, divided in excess of $100,-000.00 realized from the sale, and moved to the Rio Grande Valley. Deceased left the Valley in April 1951, ostensibly to find a new location, and contestant never saw deceased again. However, correspondence was carried on with deceased, and each assisted the other in transaction of business affairs. There was no evidence indicating either party ever secured a divorce.

Proponent's evidence showed she and deceased were never married, and she knew deceased was married to contestant. After deceased left the Valley proponent began living with him, and they had traveled over several states looking for a place to make a new life before acquiring a ranch near Boswell, Oklahoma. During the entire time these parties held themselves out to the world as husband and wife. Proponent testified deceased stated he had paid off contestant, and never mentioned the fact of still being married.

Contestants point out this will was executed approximately a year after deceased left his wife, and at a time when he knew the marriage still existed and that no provision had been made for his daughter. Upon this basis the judgment is attacked from the standpoint a confidential, illicit relationship existed between testator and proponent. And, the will being an unnatural will, coupled with untrue statements as to his marital status, discloses undue influence had been brought to bear upon testator. From this contestants insist the burden devolved upon proponent to overcome the presumption of undue influence, and this burden was not met by proponent.

First considering contestants' claim this was an unnatural will, we are of the opinion this argument is without substantial merit. The fact a will is unnatural, unfair, or unjust creates no presumption testator was incompetent. No presumption of mental incapacity arises because a will makes unequal distribution, or gives property to persons other than those who are natural objects of the testator's bounty. 94 C.J.S. Wills § 35. The law

does not require testator to be either humane or just in disposition of his property. If possessed of requisite mental capacity testator may make an unequal distribution of property among his heirs or give it entirely to strangers. And, where the language of the will evinces testator's clear intent to disinherit, or exclude natural children from participating in his estate, such act does not vitiate the will. Whitman v. Whitman, Okl., 430 P.2d 802; In re Groves' Estate, Okl., 321 P.2d 381; In re Smith's Estate, 197 Okl. 405, 172 P.2d 328; In re Adams' Estate, 203 Okl. 377, 222 P. 2d 366. Intention to disinherit must appear from the four corners of a will. Spaniard v. Tantom, 131 Okl. 75, 267 P. 623. This intention was expressed clearly by the quoted provision of this will.

The remaining argument urges the confidential, illicit relationship, coupled with testator's false declaration of marital status, disclosed undue influence was exerted, which shifted to proponent the burden of overcoming the presumption of undue influence. In one instance this Court, under a vastly different factual situation, declared that existence of a highly confidential relationship between testator and a beneficiary under the will created a presumption of undue influence which shifted to such beneficiary the burden of showing lack of undue influence. In re Harjoche's Estate, 193 Okl. 631, 146 P.2d 130.

■ We have held numerous times, however, that existence of confidential or fiduciary relationship between testator and the principal beneficiary standing alone does not necessarily constitute undue influence. Canfield v. Canfield, 167 Okl. 590, 31 P.2d 152; In re Lincoln's Estate, 185 Okl. 464, 94 P.2d 227; Brown v. Brown, Okl., 287 P.2d 913; In re Fletcher's Estate, Okl., 269 P.2d 349: In re Groves' Estate, supra. And even power, motive and opportunity to exercise undue influence do not alone authorize an inference such influence in fact was exerted in procuring execution of a will. Holliday v. Holliday, Okl., 327 P.2d 456.

■ Generally, it is recognized existence of illicit relations between the testator and beneficiary does not constitute undue influence. The mere fact influence is exercised by one engaged in an adulterous relationship with the testator does not invalidate a will unless the evidence also shows such influence destroys the testator's free agency. 94 C.J.S. Wills § 231; In re Swartz's Will, 79 Okl. 191, 192 P. 203, 16 A.L.R. 450. Application of the text principles above mentioned is most forcefully expressed in In re Quenville's Estate, 220 Or. 159, 347 P.2d 609, 348 P.2d 1090. The factual situation there disclosed approximates the present appeal most closely. However, there testatrix's social and intimate life was indulged openly, publicly, without pretense, and with beneficiary's wife having knowledge of the illicit relationship.

■ Decisions of this Court defining undue influence and applying settled principles of law to variant factual situations are too numerous to permit citation. In Canfield v. Canfield, supra, this Court, reviewing many decisions of other courts, observed that it is a reasonable assumption a testator may maintain warm affection for one who has been his companion and ministered to him during life's closing years. Thus, kindness and consideration shown a testator cannot be considered as constituting undue influence which destroys a will. Admittedly the cases reviewed in Canfield, supra, involve wills based upon marriage or family ties of blood kin, thus differing from the present case.

■ In this appeal we are faced with a situation created by a meretricious relationship, entered into freely by the parties, and maintained with all the respectability and outward recognition of convention observable in a valid marriage for a substantial period of years. The theory of undue influence is that a testator has been induced, by means employed, to execute an instrument which in form is his will but which, in reality, expresses testamentary

**108**

dispositions he would not have made voluntarily. See Page on Wills § 126, @ 145. An illicit or immoral relationship standing alone neither constitutes undue influence, nor creates a presumption of undue influence on part of the beneficiary. The record does not show any basis for contestants' claim of undue influence, except the fact of meretricious relationship. This fact standing alone neither gives rise to presumption of undue influence, nor justifies an inference to that effect. Mere suspicion undue influence was brought to bear does not justify denying admission of will to probate. Uncontroverted evidence of testator's strong will and positive character effectively negated contestants' claim based upon such relationship. Kindt v. Parmenter, 83 Okl. 116, 200 P. 706.

Affirmed.

All Justices concur.