231 P.3d 727 (2009)
2010 OK CIV APP 24
In the Matter of the ESTATES OF Bartley John David McLEAN and Beulah Simpson McLean, same person as Beulah S. McLean, both deceased.
John L. Branson, Jeffrey Branson, and Jimmie Kay Williams, Appellants,
v.
Jael McLean, Marcus Tye McLean, and Jaime Carol McLean, Appellees.
No. 106,200. Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 3.
Court of Civil Appeals of Oklahoma, Division No. 3.
December 4, 2009.
Certiorari Denied February 22, 2010.
*728 Doug Friesen, Oklahoma City, OK, for Appellants.
Thomas B. Goodwin, Cheyenne, OK, for Appellee Jael McLean.
Thomas S. Ivester, Ivester, Ivester, & Invester, Sayre, OK, for Appellees Marcus Tye McLean, and Jaime Carol McLean.
LARRY JOPLIN, Judge.
¶ 1 Appellants John L. Branson, Jeffrey Branson, and Jimmie Kay Williams (individually, by name, or collectively, Appellants) seek review of the trial court's order determining Appellees Jael McLean, Marcus Tye McLean, and Jaime Carol McLean (Appellees) to be sole and only heirs of Bartley John David McLean, Deceased, the pretermitted heir of Beulah Simpson McLean, Deceased. In this proceeding, Appellants challenge the trial court's refusal to admit evidence of the intentional omission of Bartley from Beulah's Will.
¶ 2 Beulah Simpson McLean had two children, a daughter and a son, Bartley John David McLean. Beulah's daughter (and her child) died in an automobile accident sometime prior to 1988.
¶ 3 In 1988, Beulah, a Texas resident, executed her Last Will and Testament in Texas. *729 In her Will, Beulah devised all of her estate to her nephew John L. Branson, nephew Jerry L. Branson, and Jimmie Kay Williams, in equal shares, and, if any beneficiary predeceased her, devised "the share of my estate which he or she would have received to his or her children who survive[d]" her.[1] Beulah did not mention Bartley.
¶ 4 Bartley died in 2000, survived by three children, Appellees Jael McLean, Marcus Tye McLean, and Jaime Carol McLean. Beulah died in 2002. At the time of her death, Beulah owned the surface and a fraction of the minerals underlying one hundred sixty (160) acres of real property in Roger Mills County, Oklahoma.
¶ 5 In 2006, nephew John L. Branson filed his Petition for Probate of Beulah's Will in the trial court.[2] Over John L. Branson's objection, the trial court held that, prior to her death, Beulah owned a fractional interest in the minerals underlying the Roger Mills County property, and Beulah validly conveyed one-half of her interest in the surface of the Roger Mills County property to her son, Bartley.[3]
¶ 6 Appellees subsequently filed their Applications to Share in Beulah's estate as the children of her omitted son, Bartley, and Beulah's sole and only heirs at law. Appellants objected. To the objection, Appellants attached an order of a Texas District Court severing the relationship between Beulah and Bartley with Jael McLean.[4]
¶ 7 At the hearing on Appellees' claim and Appellants' objection, Appellants offered a videotape of Beulah during her initial interview with the Texas attorney who drafted her Will. By offer of proof, Appellants said the tape reflected Beulah's intentional omission of Bartley from her Will, and that the tape was admissible under Texas law, the law in effect where Beulah made her Will. Appellees responded, arguing Beulah did not express her intentional omission of Bartley in her Will, and, under Oklahoma law, absent any ambiguity in the Will, extrinsic evidence was inadmissible to show such intent.
¶ 8 On consideration of the parties' arguments, the trial court held:
.... Beulah ... omitted to provide in her will for her son, Bartley ..., who predeceased her leaving [Appellees] as his sole and only issue.
[T]he omission by Beulah ... to provide for her son does not appear from the four corners of her Will to have been intentional. There is no ambiguity in the text of the Will and insufficient evidence of latent ambiguity to warrant resort to extrinsic evidence to establish intent. The children of the son of Beulah ... are pretermitted heirs entitled to intestate shares of her Oklahoma estate.
The trial court accordingly awarded Beulah's Oklahoma property to Appellees in equal shares. Appellants appeal.
¶ 9 "Probate proceedings are of equitable cognizance." In the Matter of the Estate of Holcomb, 2002 OK 90, ¶ 8, 63 P.3d 9, 13. (Footnotes omitted.) "While an appellate court will examine and weigh the record proof, it must abide by the law's presumption that the nisi prius decision is legally correct and cannot be disturbed unless found to be clearly contrary to the weight of the evidence or to some governing principle of law." Id. (Emphasis original.) "If legally correct, a district court's ruling will not be reversed because of its faulty reasoning, erroneous finding of fact or its consideration of an immaterial issue."
¶ 10 Section 132 of title 84, O.S.2001, provides:

*730 When any testator omits to provide in his will for any of his children, or for the issue of any deceased child unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator, as if he had died intestate,....
Section 152 of title 84, O.S.2001, provides:
In case of uncertainty, arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations.

(Emphasis added.)
¶ 11 Relevant to this appeal, the Oklahoma Supreme Court has consistently held:
Title 84 O.S.1991 § 132 provides that if a testator fails to provide for the issue of a deceased child, the grandchild shall share in the estate as if the testator had died intestate. The purpose of § 132 is to protect an issue's right to take unless the will itself gives a clear expression of an intentional omission. In interpreting § 132, we have consistently held that the intent to disinherit an heir must appear upon the face of the will in strong and convincing language....
In the Matter of the Estate of Hoobler, 1996 OK 56, ¶ 8, 925 P.2d 13, 17. Accord, In the Matter of the Estate of Woodward, 1991 OK 25, ¶ 5, 807 P.2d 262, 264. Moreover:
.... A latent ambiguity will arise from a fact or circumstance extraneous to the text which renders the meaning uncertain. [Wh]ere there is no ambiguity but only silence ... the law's command has supplied its own answer. The pretermitted-heir statute superimposes itself upon the silent will to establish heirship in the protected person. The status once so created by force of law cannot be erased by parol. The needed intent for the heir's omission cannot come dehors the will from sources not testamentary in character.
Crump's Estate v. Freeman, 1980 OK 80, ¶ 4, 614 P.2d 1096, 1098. "Parol evidence was not allowed to show the testator's intent to disinherit his granddaughter in Crump." In the Matter of the Estate of Flowers, 1993 OK 19, ¶ 13, 848 P.2d 1146, 1152.
¶ 12 In Estate of Flowers, testatrix and her husband adopted a girl and a boy, biological siblings. 1993 OK 19, ¶ 2, 848 P.2d at 1148-49. Four years later, the Okfuskee County Court declared the girl delinquent on petition by testatrix's husband, and the girl was committed to foster care. Id. Testatrix and her husband relinquished their parental rights to the girl, and "the court's order provide[d] that they were released from all further liabilities and responsibilities as [the girl's] parents." Id.
¶ 13 Testatrix later executed her Last Will and Testament without mention of the girl, the trial court held the girl was a pretermitted heir entitled to share in testatrix's estate, and the Court of Appeals affirmed. Estate of Flowers, 1993 OK 19, ¶ 4, 848 P.2d at 1148-49. The Supreme Court granted further review, holding that, "[b]ecause [testatrix] died after the enactment of the Adoption Act abolishing all differences between natural and adopted children and because the ... termination of [her] parental rights [under Oklahoma law did] not affect [the girl's] right to inherit from its parent, [she] qualifie[d] as a pretermitted heir under 84 O.S.1991 § 132." Estate of Flowers, 1993 OK 19, ¶ 15, 848 P.2d at 1151. However, the Supreme Court also held:
The instant cause is similar to Crump in that the entire estate was given to [testatrix's] sisters in the will. The cause differs in that there is an extraneous fact making the will ambiguous  the termination order, duly filed in a court of record and admitted by the trial court. The very existence of this order raises questions concerning [testatrix's] intent. If [testatrix] thought the termination order ended any relationship between [her] and [the girl], the failure to mention [the girl] in the will may well have been intentional. If she believed that some familial relationship continued to exist, did [testatrix's] stated intent to disinherit her adopted son and his `kin' coupled with the false statement that she had only an adopted son create an ambiguity within the will? The intention of the testator is controlling; when the Court construes a *731 will, it must ascertain and give effect to the testator's intent, unless the intent attempts to effect what the law forbids. Here, the termination order makes the admission of extrinsic evidence necessary to determine intent. We find that the existence of the termination order is an extraneous fact rendering the testatrix's will ambiguous. Parole evidence is admissible to ascertain the adoptive mother's intent.
Estate of Flowers, 1993 OK 19, ¶ 14, 848 P.2d at 1152. The Supreme Court consequently reversed the order of the trial court and remanded for further proceedings. Estate of Flowers, 1993 OK 19, ¶ 16, 848 P.2d at 1152-53.
¶ 14 We distinguish Estate of Flowers from the present case. In Estate of Flowers, the parent/child relationship between the testatrix and the omitted child had been terminated by an order admitted into evidence by the trial court. In the present case, and solely according to an offer of proof, only the relationship of Bartley's child to her grandmother, testatrix Beulah, and her father, Bartley, had been terminated, not the parent/child relationship of the testatrix, Beulah, and the omitted child, Bartley. The order terminating the relationship of Beulah and Bartley to the grandchild, Appellee Jael McLean, consequently creates no ambiguity in Beulah's Will concerning Bartley's omission as to justify, under Oklahoma law, the admission of the extrinsic evidence of the video tape purportedly establishing Beulah's intent to disinherit Bartley.
¶ 15 Furthermore:
Except as otherwise provided, the validity and interpretation of wills is governed, when relating to real property within this state, by the law of this state; when relating to personal property, by the law of the testator's domicile.
84 O.S.2001 § 20. (Emphasis added.) See also, 16 Am. Jur. 2d, Conflict Of Laws, § 61.[5] So, Oklahoma law controls the devise of Oklahoma realty by a non-resident testator. Dean v. Moore, 1962 OK 177, ¶ 3, 380 P.2d 934, 935[6]; In re Adams' Estate, 1950 OK 201, ¶ 6, 203 Okla. 377, 222 P.2d 366, 368[7]; Bacus v. Burns, 1915 OK 401, ¶¶ 8-9, 48 Okla. 285, 149 P. 1115, 1116.[8] The law of the state where real property is located also governs the determination of the rights of a pretermitted child. See, e.g., Price v. Johnson, 78 N.M. 123, 428 P.2d 978, 981 (1967); Crossett Lumber Co. v. Files, 104 Ark. 600, 149 S.W. 908, 910-911 (1912).
¶ 16 Under the Texas pretermitted-heir statute, extrinsic evidence may be admissible to show an heir's omission by "accident" or "mistake." V.A.T.S. Probate Code, § 67; Estate of Gorski v. Welch, 993 S.W.2d *732 298, 304-305 (Tex.App.-San Antonio 1999). In Oklahoma, however, "[t]he needed intent for the heir's omission cannot come dehors the will from sources not testamentary in character," because "[o]ur pretermitted-heir statute, which makes no reference to `accident' or `mistake'[,] ... confine[s] judicial inquiry to a search for the expressed testatorial intention to omit one's protected heir." 84 O.S. § 132; Crump's Estate, 1980 OK 80, ¶ 4, 614 P.2d at 1097-1098.[9]
¶ 17 Because there is no patent ambiguity on the face of Beulah's will, the only circumstance in which extrinsic evidence might be admitted is if some latent ambiguity appears within the will's four corners. Appellants here argue that, because extrinsic evidence is admissible in the state where the will was executed (Texas), but not in the state where the real property is located (Oklahoma), Beulah's will is latently ambiguous.
¶ 18 However, in our view, the fact that extrinsic evidence may or may not be admissible does not create some latent ambiguity justifying the admission of extrinsic evidence in this case. By force of 84 O.S. § 20, the validity and interpretation of Beulah's will, as it relates to the disposition of her Oklahoma real property, is governed by Oklahoma law. As to her Oklahoma real property, Oklahoma law also governs the determination of the rights of any pretermitted heirs pursuant to 84 O.S. § 132. Under Oklahoma law, § 132, "[t]he needed intent for the heir's omission cannot come dehors the will from sources not testamentary in character." Crump's Estate, 1980 OK 80, ¶ 4, 614 P.2d at 1098.
¶ 19 The potential admissibility of evidence in one state, by itself, does not create a latent ambiguity in a will justifying the admission of extrinsic evidence. In Oklahoma, one must examine the nature of the evidence itself to determine its admissibility.
¶ 20 The video tape was not referred to or incorporated in Beulah's will. The video tape does not appear to have been acknowledged in the manner of self-proving testamentary documents. The tape stands outside the will and is not a "source testamentary in character." Under Oklahoma law, the video tape is inadmissible to demonstrate Beulah's intentional omission of Bartley.
¶ 21 Beulah failed to clearly express her intent to disinherit Bartley in her Will. Under § 132, Beulah is deemed to have died intestate as to Bartley, and Bartley is Beulah's pretermitted heir. Bartley's surviving offspring are consequently Beulah's sole and only heirs at law. The trial court did not err in so holding.
¶ 22 The order of the trial court is AFFIRMED.
MITCHELL, C.J., concurs.
HANSEN, P.J., dissents.
CAROL M. HANSEN, Presiding Judge, dissenting.
¶ 1 The only issue in this appeal is whether extrinsic evidence, in this case video evidence taken during the creation of the will, may be admitted to show intention on the part of the testator. There is no other issue.
¶ 2 At the time of the execution of the will, the testator was a resident of Texas, the will was executed in Texas and prepared by a Texas attorney. In the will, Testator did not mention her eldest son, Bartley. Apparently the video tape would indeed show she intended to disinherit her son and his heirs.
¶ 3 A will must be construed according to the intention of the testator 84 O.S.2001 § 151. Clearly the tape will show testator's intent.
*733 ¶ 4 Title 84 O.S.2001 § 20 does not control the admission of parol evidence. Crump, cited by the majority states, "the law in force in the state when the will is made forms part of that instrument" Crump at p. 1099. Thus, the Texas law allowing extrinsic evidence forms a part of the will. We are here dealing with the correctness of the admission of parol evidence  nothing more. Texas law is the law of the state where the will was made. Texas law allows parol evidence to show the intent of the testator. The reasonable expectations of Testator when she made the will were that the video would be admitted to show her intent to disinherit Bradley and his heirs at law.
¶ 5 Probate proceedings are equitable in nature. In re Holcomb, 2002 OK 90, 63 P.3d 9. In my view, because the tape would clearly evidence Testator's intent, not only the law, but equity requires the tape to be admitted.
¶ 6 I also believe there is merit to Appellant's argument the legal differences between the two states' treatment of parol evidence creates a latent ambiguity, which in Oklahoma would allow parol evidence to be admitted to show intent of testator. "A latent ambiguity will arise from a fact or circumstance extraneous to the text  which renders the meaning uncertain." (Emphasis supplied) Crump at p. 1099.
¶ 7 I would reverse and remand with directions to admit the video evidence.
NOTES
[1] Nephew/Devisee Jerry L. Branson predeceased Beulah, but was survived by a son, Appellant Jeffrey Branson.
[2] Nephew John L. Branson was appointed administrator of Beulah's Texas estate in the District Court of Hutchinson County, Texas.
[3] By unpublished opinion, the Court of Civil Appeals affirmed the trial court's judgment. In the Matter of the Estates of Bartley John David McLean and Beulah Simpson McLean, Case No. 103,963 (Ok.Civ.App.Div.III, March 21, 2008) (Petition for Certiorari denied as untimely filed, May 19, 2008) (Petition for Rehearing denied, June 16, 2008).
[4] The order appears to have been obtained by Jael's mother shortly after her divorce from Bartley when Jael was about two years old.
[5] "In general, all questions arising under wills in regard to real property are referred to the lex rei sitae. That is, the testamentary disposition of real property is governed by the laws of its situs...."
[6] "The residuary estate under consideration consists only of real property located within Oklahoma. Therefore, the fact that testatrix was domiciled in Arkansas has no bearing on our decision. This is true because of the provisions of 84 O.S.1961 § 20: `Except as otherwise provided, the validity and interpretation of wills is governed, when relating to real property within this State, by the law of this State; when relating to personal property, by the law of testator's domicile.' We held in In re Adams' Estate, 203 Okl. 377, 222 P.2d 366; and in Bacus v. Burns, 48 Okl. 285, 149 P. 1115; that, as to the interpretation of a devise by will of real estate lying within Oklahoma, the law of Oklahoma must govern."
[7] "The first question presented is whether the interpretation of the will is to be governed by the law of Texas, the domicile of the testators, or that of Oklahoma, where lies the real estate involved. This question is not an open one because foreclosed by statute, Tit. 84 O.S. 1941 § 20. The statute was construed in Bacus v. Burns, 48 Okl. 285, 149 P. 1115."
[8] "It is conceded that the testator was a resident of Kansas at the time the will was made, and that the same was properly executed under the laws of that state. This being true, it is entitled to probate under the laws of this state under section 8351, Rev. Laws 1910, which is as follows: `A will, ..., made out of this state by a person not having his domicile in this state, is as valid when executed according to the law of the place in which the same was made, or in which the testator was at the time domiciled, as if it were made in this state, and according to the provisions of this article.' Its interpretation, however, so far as the same relates to real estate located in this state, is governed by the laws of this state. Section 8336, Rev. Laws 1910."
[9] "Two different approaches to the problem of an heir's omission from his ancestor's will are identified in national legal literature by reference to the Massachusetts and Missouri prototype statutes. The Missouri-type solution benefits children `not named or provided' for in the will, whereas Massachusetts makes superimposition of heirship status subject to the qualifying phrase `unless it shall appear that such omission was intentional and not occasioned by any mistake or accident.' Under a Massachusetts-type statute extrinsic evidence is admitted to show both presence or absence of intention to disinherit, while under a Missouri-type solution any evidence offered to rebut the statutorily-created presumption of inadvertent omission must appear within the four corners of the will. Oklahoma's pretermitted-heir provision has been characterized as Massachusetts-derived ... [and] disallowing the use of parol proof to show testator's unexpressed intentional omission of children from the will...."