2014 OK CIV APP 20

**In the Matter of the ESTATE OF Agnes L. BOYD, Deceased,**

**Johnie Glen Boyd, Appellant,**

**v.**

**Osker Cleatis Boyd, Appellee,**

**and**

**Eva L. Boyd, if living and if deceased her known and unknown successors, Defendants.**

**No. 110439.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Jan. 31, 2014.

we review the matter *de novo.* *In re A.N.O.*, 2004 OK 33, ¶ 3, 91 P.3d 646, 647.

Laurie E. Hays, Law Office of Laurie E. Hayes, P.L.L.C., Arnett, Oklahoma, for Appellant,

David P. Zacker, Bethany, Oklahoma, for Appellee.

WM. C. HETHERINGTON, JR., Vice–Chief Judge.

¶ 1 Johnie Glen Boyd (Appellant) argues the trial court's order on appeal fails to give full faith and credit to probate proceedings in Texas in which Raymond Glen Boyd was determined to be the sole devisee of Agnes L. Boyd (Decedent). The Oklahoma trial court's order provided for the division of Oklahoma oil, gas, and mineral property into one-fourth interests according to Oklahoma statutes. Pursuant to both case law and long-standing statutory law, the order of the trial court is AFFIRMED.

## STANDARD OF REVIEW

¶ 2 As the Court explains in *Estate of Holcomb*, 2002 OK 90, ¶ 8, 63 P.3d 9, 13:

> Probate proceedings are of equitable cognizance. While an appellate court will examine and weigh the record proof, it must abide by the law's presumption that the *nisi prius* decision is legally correct and cannot be disturbed unless found to be clearly contrary to the weight of the evidence or to some governing principle of law.

(Footnotes omitted.) Statutory construction presents a question of law. *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Oklahoma Employment Security Commission v. Oklahoma Merit Protection Commission*, 1995 OK CIV APP 76, 900 P.2d 470. When an appeal presents a question of law concerning the interpretation and application of statutes,

## FACTS

¶ 3 Decedent's June 26, 1969 will, which is self-proving under Texas law, devises and bequeaths "all [her] property of every kind and character of which [she] may die seized and possessed" to "her beloved son, RAYMOND G. BOYD" or, if he predeceases her or they die simultaneously or within sixty days thereafter "as a result of a common accident, disaster or catastrophe" to her "beloved daughter-in-law, Eva L. Boyd." Decedent names Raymond G. Boyd as Independent Executor of the estate.

¶ 4 Decedent had four sons, all of whom survived her when she died in Texas on September 1, 1969.[1] Her will was admitted to probate on September 22, 1969, and Raymond G. Boyd, Appellant's lather, was issued Letters Testamentary as Independent Executor by the County Court in and for Randall County, Texas. In that same September 22, 1969 Order, the Texas Court found "[t]hat according to the terms of said will, the sole devisee thereunder is the said Raymond G. Boyd." The Inventory, Appraisement and List of Claims filed in the 1969 Texas proceedings lists only separate personal property.

¶ 5 Three of her sons later died in, respectively, 1985 (Irvin Boyd), 1988 (Wilson Boyd), and 1994 (Raymond G. Boyd). Irvin Boyd's son, Robert Boyd, died in 2009 and is survived by Decedent's great granddaughter, Sara Boyd Heidi Jennsen. Wilson Boyd's daughter Barbara Arm Parker Shrader died in 2010, and she is survived by Decedent's great grandson, Paul Parker. Raymond G. Boyd is survived by his son, Appellant. At the time Appellant began proceedings in Oklahoma, Decedent's sole surviving son was Osker Cleatis Boyd, who resided in Missouri.

¶ 6 Certified copies of several documents[2] from proceedings in Randall Coun-

---

1. Her husband, Luther R. Boyd, predeceased her in 1954.

2. These documents, dated between September 8, 1969, and September 24, 1969, include an Appli-

cation to Probate Will, a notice to the Randall County, Texas sheriff to post notice, the Texas sheriffs return, an Order Probating Will and for Letters Testamentary, an Oath of Executor, an Inventory, Appraisement and List of Claims, and

ty, Texas, including Decedent's Last Will and Testament (Will), are attached to Appellant's Petition for Probate of Foreign Will, Appointment of Personal Representative, Determination of Heirs, Devisees, and Legatees which was filed on January 6, 2011, in the District Court of Ellis County, Oklahoma (Petition). Appellant's Petition alleges Decedent possessed oil, gas, minerals, and mineral rights in that county at the time of her death. Decedent's will was admitted to probate and Appellant was appointed as personal representative of the estate by a March 7, 2011 Order. Letters Testamentary were issued to Appellant on March 30, 2011.

¶ 7 On November 15, 2011, Appellant filed a First and Final Accounting, Petition for Order Allowing Final Account, and Petition for Determination of Heirs, Distribution and Discharge (Accounting). Appellant lists the following as Decedent's property:

1. An UNDIVIDED .00128907 interest in and to all of the oil, gas, minerals, and mineral rights in and under and that maybe [sic] produced from Section Twenty-two (22), Township Nineteen (19) North, Range Twenty-five (25), W.I.M. Ellis County, State of Oklahoma;

2. An UNDIVIDED .00087891 interest in and to all of the oil, gas, minerals, and mineral rights in and under and that maybe [sic] produced from Section Twenty-three (23), Township Nineteen (19) North, Range Twenty-five (25), W.I.M. Ellis County, State of Oklahoma.[3]

He asks that this property "be distributed in accordance with the dispositive provisions contained in the Decedent's Last Will and Testament" and that, by doing so, distribute one hundred percent of the above property to

the Estate of Raymond Glen Boyd, Deceased.

¶ 8 On January 5, 2012, Osker Cleatis Boyd and the heirs and successors of Wilson Boyd, deceased,[4] (Appellees) filed an objection to the Accounting. They point out that Decedent's Will fails to note how at the time of her death, she was survived not only by Raymond G. Boyd but also by three other children, who are pretermitted heirs not referred to "either by name or class." Appellees claim [5] entitlement to an intestate share of the Property as pretermitted heirs.

¶ 9 Appellant's response to the objection argues the Texas court's 1969 order finding Raymond G. Boyd was Decedent's sole devisee according to her Will should be accorded full faith and credit. He notes the Texas court's order found Decedent was survived by her four sons and enforced the provisions of her Will.

¶ 10 The Oklahoma trial court rejected Appellant's analysis, finding 84 O.S.2011 § 20 applicable, none of Decedent's children were intentionally omitted from her Will, and each of her four children was entitled to "an undivided one fourth (1/4th) interest in the Oklahoma mineral property." This appeal followed.

### THE APPEAL

¶ 11 The Oklahoma Supreme Court directed this matter to proceed as an appeal from an interlocutory order appealable by right, citing 58 O.S.2011 § 721(7) and (10) and Okla.Sup.Ct.R. 1.60(h). The statutes primarily at issue in this appeal, 58 O.S.2011 § 51, 84 O.S.2011 § 20, and 84 O.S.2011 § 132, though re-codified, are not recently enacted

---

an Order Approving Inventory, Appraisement and List of Claims. Abo attached are two documents from the Comptroller of Public Accounts, State of Texas, relating to inheritance tax.

**3.** These properties were not listed as assets in the Texas probate proceedings, which affirmatively indicated "None" in an inventory section for real property.

**4.** In addition to Appellant, Appellees name as defendants Raymond Boyd's "known and unknown successors," and "Eva L. Boyd, if living

and if deceased, her known and unknown successors."

**5.** Appellees also cite 84 O.S.2011 § 131, which addresses the succession rights of omitted children born after the making of a will, either in a decedent's lifetime or after death. Decedent's Will was executed in June of 1969, some three months prior to her death and the order probating the Will in Texas describes all of Decedent's surviving sons as "over 21 years of age." This factual finding is unchallenged in the appellate record.

but instead have been the law in Oklahoma since 1910.

¶ 12 Appellant contends the Order on appeal fails to accord full faith and credit to the Will and decision of the probate court in Texas, citing the ancillary probate provisions of § 51, which provides:

Every will duly proved and allowed in any of the territories, or in any of the United States or the District of Columbia, or in any foreign country or state, may be *allowed and recorded* in the district court of any county in which the testator shall have left any estate, or any estate for which claim is made. (Emphasis added.)

Appellant argues § 131 and § 132, both of which address rights of omitted pretermitted heirs, are not applicable. He argues § 20 and § 51 conflict and the trial court's application of § 20 nullifies both § 51 and the Full Faith and Credit Clause of the United States Constitution We disagree.

¶ 13 There are differing purposes for the Legislature's enactments of § 51 and § 20. On its face, § 51 provides that foreign wills may be recorded within the state and addresses the jurisdiction of the courts of Oklahoma to consider the same. *See, e.g., Mitchell v. Cloyes,* 1980 OK 184, 620 P.2d 398 (District court held to have jurisdiction to admit to probate Kansas will of Kansas resident owning mineral interests in Ellis County, Oklahoma). There was no dispute that Decedent's Will was "duly proved and allowed" according to the laws of Texas. The paramount issue presented for resolution by the trial court was not the *admission* of Decedent's Will to probate pursuant to § 51 but its proper interpretation once admitted and recorded.

■ ¶ 14 A judgment of a court of general jurisdiction of one state is entitled to full faith and credit in every other state unless void for want of jurisdiction. *Moody v. Branson,* 1943 OK 142, ¶ 0, 192 Okla. 327, 136 P.2d 925. As stated in *Sharp v. Sharp,* 1916 OK 736, ¶ 6, 65 Okla. 76, 166 P. 175, 177:

The jurisdiction of any court exercising authority over any subject may be inquired into in every other county when the proceedings of the former are relied on and

brought before the latter by a party claiming the benefit of such proceedings. This right of examination into jurisdiction is not confined alone to domestic judgments, but extends as well to the judgments of the courts of sister states. This doctrine was recognized in the Supreme Court of the United States in *Elliott v. Peirsol,* 26 U.S. (1 Pet.) 328, 7 L.Ed. 164 [ (1828) ], and has been followed in many cases, among them *Thompson v. Whitman* [85 U.S. 457], 18 Wall. 457, 21 L.Ed. 897 [ (1873) ], *Haddock v. Haddock,* 201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867, 5 Ann. Cas. 1 [ (1906) ], *Hart v. Sansom,* 110 U.S. 151, 3 S.Ct. 580 [586,] 28 L.Ed. 101 [ (1884) ], *Carpenter v. Strange,* 141 U.S. 87, 11 S.Ct. 960, 35 L.Ed. 640 [ (1891) ], and *Fall v. Eastin,* 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65, 25 [23] L.R.A. (N.S.) 924, 17 Ann. Cas. 853 [ (1909) ]. It was announced by this court in *Southern Pine Lumber Co. v. Ward,* [1905 OK 114], 16 Okla. 131, 85 P. 459; *Earl v. Earl,* 48 Okla. 442, 149 P. 1179 [ (1915) ], and *In re Moore's Guardianship,* [1915 OK 794], 51 Okla. 731, 152 P. 378.

¶ 15 As the United States Supreme Court notes in *Cole v. Cunningham,* 133 U.S. 107, 112, 10 S.Ct. 269, 270, 33 L.Ed. 538 (1890), there are limits to the Full Faith and Credit Clause of the Constitution of the United States:

The constitution did not mean to confer any new power on the states, but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory. It did not make the judgments of the states domestic judgments to all intents and purposes, but only gave a general validity, faith and credit to them as evidence. No execution can be issued upon such judgments without a new suit in the tribunals of other states, and they enjoy, not the right of priority or privilege or lien which they have in the state where they are pronounced, but that only which the *lex fori* gives to them by its own laws, in their character of foreign judgments.

■ ¶ 16 "It is settled law that oil and gas in place are minerals, and that so long as they remain unsevered from the soil are a part of the realty." *Cuff v. Koslosky,* 1933

OK 487, ¶ 10, 165 Okla. 135, 25 P.2d 290, 291. "That such interest may properly be reserved to a grantor is a well-recognized principle in this state and that such interest is an interest in *land.*" *Hudson v. Smith,* 1935 OK 204, ¶ 13, 171 Okla. 79, 41 P.2d 861, 863. (Citations omitted.) The decree of another state attempting to settle equitable rights to lands in Oklahoma, in so far as such decree relates to the lands in Oklahoma is *coram nonjudice* and void because "[j]urisdiction to render a judgment *in rem* inheres only in the courts of the state which is the situs of the *res.*" *Sharp v. Sharp,* 1916 OK 736, ¶ 6, 65 Okla. 76, 166 P. 175, 177 (citing *Watkins v. Holman's Lessee,* 41 U.S. 25, 16 Pet. 25, 10 L.Ed. 873 (1842); *Harrison v. Harrison,* L.R. 8 Ch. 342; *Davis v. Headley,* 22 N.J.Eq. 115 (1871); *Clopton v. Booker,* 27 Ark. 482 (1872); *Williams v. Nichol,* 47 Ark. 254, 1 S.W. 243 (1886); *Winn v. Strickland,* 34 Fla. 610, 16 So. 606 (1894); *Poindexter v. Burwell,* 82 Va. 507 (1886); *Cooper v. Ives,* 62 Kan. 395, 63 P. 434 (1901); *Smith v. Smith,* 174 Ill. 52, 50 N.E. 1083, 43 L.R.A. 403 (1898)). *See also, Wilcox v. Wilcox,* 1947 OK 99, ¶ 6, 198 Okla. 370, 178 P.2d 874, 875 (recognizing, in *dicta, Sharp* as standing for "the rule that the courts of one state are without jurisdiction to render decrees directly affecting the title to lands in another state.")

¶ 17 The common law rule that the law of the place where real property is located controls the validity and effect of a will is codified in § 20, which provides, in pertinent part that "[e]xcept as otherwise provided, the validity and interpretation of wills is governed, when relating to real property within this state, by the law of this state."[6] The Oklahoma Supreme Court, addressing the application of § 20 to a foreign will, explicitly states in *Dean v. Moore,* 1962 OK 177, ¶ 4, 380 P.2d 934, 935:

We held in *In re Adams' Estate,* [1950 OK 201], 203 Okl. 377, 222 P.2d 366; and in *Bacus v. Burns,* [1915 OK 401], 48 Okl. 285, 149 P. 1115; that, as to the interpretation of a devise by will of real estate lying within Oklahoma, the law of Oklahoma must govern.

We apply this holding to the controversy at hand and reject Appellant's contention the Texas probate court's decree must be accorded extra-territorial effect under the Full Faith and Credit Clause of the United States Constitution as to the parties' rights in Oklahoma realty.

¶ 18 Oklahoma law applies to the determination of the rights of pretermitted heirs to Oklahoma property. *In the Matter of Estates of McLean,* 2010 OK CIV APP 24, ¶ 18, 231 P.3d 727, 732. Section 132 provides:

When any testator omits to provide in his will for any of his children, or for the issue of any deceased child unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator, as if he had died intestate, and succeeds thereto as provided in the preceding section.

The only remaining question for our determination is whether Decedent's omission of Appellees appears to have been intentional.

¶ 19 We must first determine from the four corners of the will itself whether or not an intention to disinherit affirmatively appears, and if there are no ambiguities or uncertainties appearing on the face of the will, extrinsic evidence is not admissible to determine intent. *Estate of Glomset,* 1976 OK 30, ¶ 6, 547 P.2d 951, 953. As the Oklahoma Supreme Court explains in *Matter of Estate of Hester,* 1983 OK 93, ¶ 10, 671 P.2d 54, 55:

A person can express the intention to omit to provide for his children in many ways. He may expressly state that the named child is to receive nothing. He may provide that a child who claims to be pretermitted shall receive only a nominal amount. *See e.g., Bridgeford v. Estate of*

---

6. Section 20 abo provides "when relating to personal property, by the law of the testator's domicile" governs validity and interpretation. Appellant's petition seeking probate in ancillary proceedings in Oklahoma abo alleges Decedent possessed "personal property with a probable value of not in excess of $2,000.00 in September, 1969." This Oklahoma personal property, which appears to consist of royalty payments, is not at issue in this appeal.

*C.E. Chamberlin, supra* [1977 OK 206, 573 P.2d 694]. He may name the child, but leave nothing to him: *See e.g., Pease v. Whitlatch*, [1964 OK 264], [397] P.2d 894 (Okl.1964). He may declare that any child claiming to be a pretermitted heir shall take nothing. *See e.g., Dilks v. Carson*, [1946 OK 108], 197 Okl. 128, 168 P.2d 1020 (1946).

In *Hester*, the testator affirmatively declared "I have no children and have never had any children," 1983 OK 93, ¶ 2, 671 P.2d at 54.

■ ¶ 20 "Testatorial disposition of the entire estate does not alone affirmatively evince an intent to omit to provide for a child or a deceased child's issue." *Crump's Estate v. Freeman*, 1980 OK 80, ¶ 6, 614 P.2d 1096, 1099 (citing *Spaniard v. Tantom*, 1928 OK 202, 131 Okla. 75, 267 P. 623). Other than Decedent herself, Raymond G. Boyd, her daughter-in-law, the two witnesses, and a notary, the face of the Will mentions no persons by name or by other description. Decedent makes no mention whatsoever of three of her four children and no affirmative expression of an intent to disinherit anyone, either by name or by class. That being so, we conclude there are no uncertainties on the face of the Will.

¶ 21 As recognized in *In the Matter of Estates of McLean*, 2010 OK CIV APP 24, ¶ 15, 231 P.3d 727, 731, § 132 controls the devise of Oklahoma realty by a non-resident testator. The application of Oklahoma law by the trial court to the interpretation of the Will and its order based on that interpretation is **AFFIRMED.**

JOPLIN, P.J., and BUETTNER, J., concur.